**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| BROWN INDUSTRIES, INC., | ) | CASE NO. 21- 41010-pwb |
| | ) | |
| Debtor. | ) | |

**MOTION FOR AUTHORITY TO RETAIN BMC GROUP, INC.**
**AS CLAIMS, NOTICING, AND BALLOTING AGENT FOR THE DEBTOR**

COMES NOW Brown Industries, Inc., debtor and debtor-in-possession (the "**Debtor**") in the above-styled case (the "**Case**"), by and through the undersigned counsel, and make and file this Motion, respectfully showing the Court as follows:

**Relief Requested**

1.

By this Motion, the Debtor respectfully requests the entry of an order, pursuant to 28 U.S.C. § 156(c), authorizing it to employ BMC Group Inc. ("**BMC**") to, among other things: (a) serve as the Debtor's noticing agent to mail notices to certain of the estate's creditors and other parties in interest; (b) provide computerized claims, objection and balloting database services; and (c) provide expertise and consultation and assistance in claim and ballot processing and with the dissemination of other administrative information related to the Debtor's Chapter 11 Case.

**Jurisdiction**

2.

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Case is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.

On August 20, 2021, (the "**Petition Date**"), the Debtor filed a voluntary petition for relief

under Chapter 11, Subchapter V of Title 11 of the United States Code (the "**Bankruptcy**

**Code**").  The Debtor is authorized to operate its business as a debtor-in-possession pursuant to

Section 1184 of the Bankruptcy Code.

4.

Pursuant to Section 1183 of the Bankruptcy Code, Gary Murphey has been appointed as

the Subchapter V Trustee in this Case (the "**Sub-V Trustee**").

5.

Information about the Debtor's businesses and the events leading up to the Petition Date

can be found in the *Declaration of J. Darren Wilcox in Support of First Day Applications and

Motions* (the "**Wilcox Declaration**") filed with the Court which is incorporated herein by

reference.

## Basis for Relief

6.

Pursuant to 28 U.S.C. § 156(c), this Court is authorized to utilize facilities other than

those of the Clerk's office for the administration of bankruptcy cases, including such matters as

giving notice of hearings and orders filed in this Case, the meeting of creditors pursuant to

Section 341 of the Bankruptcy Code and claims bar dates, and providing record-keeping and

claims-docketing assistance.  For the reasons set forth below, the Debtor believes it is necessary

and in the best interests of its creditors and estate to engage BMC to act as outside notice and

claims agent to assume responsibility for the distribution of notices and proof of claim forms and the maintenance, processing, and docketing of all proofs of claim filed in the Debtor's Case. In addition, in connection with any plan(s) of reorganization proposed by the Debtor, the Debtor has determined that it will require the services of BMC with respect to the mailing of the Debtor's disclosure statement(s), plan(s), and ballots and in maintaining and tallying ballots in connection with the voting on such plan(s).

7.

The Debtor anticipates that there will be approximately nine hundred entities that the Debtor will be required to serve with various notices, pleadings, and other documents filed in this Case. In consideration of the number of anticipated claimants and parties in interest and the nature of the Debtor's business, the Debtor respectfully submits that the appointment of BMC will expedite the distribution of notices and relieve the Clerk's office of the administrative burden of processing such notices.

8.

BMC provides comprehensive bankruptcy management services, including data processing, noticing, claims processing, and other administrative tasks in Chapter 11 cases. The Debtor wishes to engage BMC to send out certain designated notices, maintain claims files and claims registers, and act as voting agent with respect to certain creditors in this Case. The Debtor believes that such assistance will expedite service of Federal Rule of Bankruptcy Procedure 2002 notices, streamline the claims administration process, and permit the Debtor to focus on its reorganization efforts. Accordingly, the Debtor's estate, and especially its creditors, will benefit as a result of BMC's experience and cost-effective methods.

9.

BMC will undertake such actions and procedures as directed and requested by the Debtor

and the Clerk, including, but not limited to, the following:

(a)    create and maintain a computer database of all creditors, claimants and parties-in-interest;

(b)    prepare and serve required notices in this Chapter 11 Case, which may include:

(i)    notice of the commencement and the initial meeting of creditors;
(ii)    notice of the claims bar date, if any;
(iii)    notice of objections to claims;
(iv)    notice of any hearings on a disclosure statement and confirmation of a plan of reorganization; and
(v)    other miscellaneous notice to any entities, as may be deemed necessary for the orderly administration of the Case;

(c)    after the mailing of a particular notice, prepare for filing with the Clerk's Office a certificate or affidavit of service that references the document served and includes an alphabetical listing of the parties to whom the notice was mailed and the date and manner of mailing;

(d)    receive and record proofs of claim and proofs of interest;

(e)    create and maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

(i)    the name of the Debtor;
(ii)    the name and address of the claimant, and any agent thereof;
(iii)    the date received;
(iv)    the claim number assigned; and
(v)    the asserted amount and classification of claim;

(f)    implement necessary security measures to ensure the completeness and integrity of the claims registers;

(g)    transmit to the Clerk's Office a copy of the claims registers upon request and at agreed upon intervals;

(h)    act as balloting agent which will include the following services:

- 4 -

(i)      print ballots;

(ii)     coordinate mailing of ballots, disclosure statement(s), and plan(s) of reorganization and other appropriate materials to all voting and non-voting parties, and provide affidavits of service;

(iii)    prepare voting reports by plan class, creditor, or shareholder, and amount for review and approval by the Debtor and its counsel;

(iv)    establish a toll-free number to receive questions regarding the voting on the plan(s); and

(v)     receive and tabulate ballots, inspect ballots for conformity to voting procedures, date stamp and number ballots consecutively, provide computerized balloting database services and certify the tabulation results;

(i)    maintain an up-to-date creditor matrix, which list shall be available upon request of a party-in-interest or the Clerk's Office;

(j)    record all transfers of claims pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and provide notice of such transfers as required thereunder;

(k)    comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements;

(l)    provide temporary employees to process claims, as necessary;

(m)    promptly comply with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe;

(n)    perform such other administrative and support related noticing, claims, docketing, solicitation and distribution services as the Debtor or the Clerk's Office may request;

(o)    provide reconciliation and resolution of claims services to the Debtor; and

(p)    aid in the preparation, mailing, and tabulation of ballots for the purpose of accepting or rejecting any plans of reorganization proposed by the Debtor.

10.

BMC has substantial experience in the matters upon which it is to be engaged. Founded in 1998, BMC has provided identical or substantially similar services in the Chapter 11 cases for

over twenty years.  BMC has participated in bankruptcy cases in the Northern District of Georgia and across the nation, including: *Hutcheson Medical Center, Inc. (*Bankr. N.D. Georgia, November 20,2014*); In re Entrust Energy, Inc., et al.,* No. 21-31070-MI (Bankr. S.D. Tex.); *In re Fresh Acquisitions LLC, et al.,* No. 21-30721 (SGJ) (Bankr. N.D. Tex.); *In re All American Oil & Gas Inc., et al.,* No. 18-52693-RBK (Bankr. W.D. Tex.); *In re YogaWorks, Inc., et al.,* No. 20-12599 (KBO) (Bankr. D. Del.); *In Re PetroShare Corp., et al.,* No. 19-17633 (KHT) (Bankr. D. Colo.); *In re Duro Dyne*, No. 18-2796 (MBK)(Bankr. D.N.J.); *In Re Americore Holdings LLC, et al.,* No. 19-61608-grs (Bankr. ED Ky); and *In Re CPESAZ Liquidating Inc., et al.,* No. 9:20-bk-10554-DS (Bankr. C.D. Cal.).  Thus, the Debtor believes that BMC is well suited to serve as claims, noticing, and balloting agent in this Case.

11.

BMC will be compensated according to its usual fee arrangement, which combines an hourly fee rate with per-task charges for certain services, prepaid postage expenses, and reimbursement for reasonable out-of-pocket expenses.  The exact terms of BMC's fees are set forth in the agreement attached hereto as Exhibit A.

12.

Annexed hereto as Exhibit B is the declaration of a principal of BMC, in which he/she represents that, upon information and belief, BMC is not connected with the Debtor, its creditors, other parties in interest, the United States Trustee, or any person employed by the Office of the United States Trustee, and that to the best of BMC's knowledge, after due inquiry, it does not hold or represent any interest adverse to the Debtor, its estate, or any class of creditors or equity interest holders with respect to the matters upon which it is to be engaged.

- 6 -

13.

The Debtor respectfully submits that the terms of BMC's compensation are reasonable in light of the services to be performed.  Therefore, the Debtor requests authorization to compensate BMC for services rendered, without further order of this Court, upon the submission of monthly invoices by BMC summarizing, in reasonable detail, the services for which compensation is sought.

## Notice

14.

Notice of this Motion has been provided to the Office of the United States Trustee.  In light of the nature of the relief requested, the Debtor submits that no further notice is necessary.

## Conclusion

WHEREFORE, the Debtor respectfully requests that this Court enter an order:

(a)     approving the Debtor's agreement with BMC and appointing BMC as claims, noticing, and balloting agent for the Debtor; and

(b)     granting the Debtor such other and further relief as is just and proper.

This 23rd day of August, 2021.

Respectfully submitted,

SCROGGINS & WILLIAMSON, P.C.

4401 Northside Parkway          /s/ Ashley R. Ray_____
Suite 450                       J. ROBERT WILLIAMSON
Atlanta, GA 30327               Georgia Bar No. 765214
T: (404) 893-3880               ASHLEY REYNOLDS RAY
F: (404) 893-3886               Georgia Bar No. 601559
E: rwilliamson@swlawfirm.com    MATTHEW W. LEVIN
   aray@swlawfirm.com           Georgia Bar No. 448270
   mlevin@swlawfirm.com

                                *Proposed Counsel for the Debtor*

- 7 -

EXHIBIT A

# bmcgroup
## information management

# AGREEMENT FOR SERVICES

This Agreement for services (the "Services Agreement" or "Agreement") is entered

between _____ Brown Industries, Inc. _____ (collectively "Customer") and BMC Group, Inc. ("BMC"). The services rendered by BMC pursuant to this Agreement will commence on August 20, 2021 and will continue until the Agreement is terminated as set forth below.

## I. SERVICES

A. BMC agrees to provide Customer with services assisting the Customer, Customer's counsel "Counsel" and Office of the Clerk with legal noticing and compilation, administration, evaluation and production of documents and information necessary to support a restructuring effort. At Customer's, Counsel's or the Clerk's Office's direction, as the case may be, and in accordance with any court orders or rules in the bankruptcy case(s) (including any court order authorizing BMC's engagement), BMC will (1) prepare and serve those notices required in the bankruptcy cases; (2) receive, record and maintain copies of all proofs of claim and proofs of interest filed in the bankruptcy cases; (3) create and maintain the official claims register(s); (4) receive and record all transfers of claims pursuant to Bankruptcy Rule 3001(e); (5) maintain an up-to-date mailing list for all entities who have filed proofs of claim and/or requests for notices in the bankruptcy cases; (6) assist Customer and Counsel with the administrative management of claims and notice data; (7) if requested, print, mail and tabulate ballots for purposes of plan voting; (8) create and maintain a case-specific website, (9) assist with the production of reports, exhibits and schedules of information or use by the Customer, it's counsel, or to be delivered the Court, the Clerk's Office, the U.S. Trustee or third parties; and (10) provide other technical and document management services of a similar nature requested by Customer or the Clerk's office.

B. BMC also agrees to provide the Customer with consulting services regarding legal notice, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation od schedules of assets and liabilities and statement of financial affairs, communications, confidential online workspaces and data rooms (publication to which should not violate the confidentiality provisions of this agreement) and any other service agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (Collectively the "Services").

C.  The Customer acknowledges and agrees that BMC will often take direction from the company's representatives, employees, agents and/or professionals with respect to providing Services hereunder.  The parties agree that BMC may rely upon, and the Customer agrees to be bound by, any request, advice or information provided by the Customer and its agents to the same extent as if such requests, advice or information were provided by the Customer.

D.  Customer agrees that none of the Services provided by BMC contain legal advice or opinion, and neither BMC nor its personnel shall be deemed to practice law thereunder.

## II. TECHNOLOGY SUPPORT

BMC agrees to provide computer software support and to educate and train Customer in the use of the support software, provide BMC's standard reports as well as consulting and programming support for Customer requested reports, program modifications, database modification, and/or other features.

## III. TERMS AND CONDITIONS

A.  This Services Agreement is effective as of the date of its acceptance by both the Customer and BMC.  BMC acknowledges, however, that a court order approving BMC's engagement may be required for employment in the Customer's bankruptcy matter.

B.  If the Customer commences a case under chapter 11 of the Bankruptcy Code, the Customer shall promptly file applications with the Bankruptcy Court to retain BMC (i) as claims and noticing agent pursuant to 28 U.S.C Section 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. Section 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to BMC.

C.  If any Customer Chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, BMC will continue to be paid for Services pursuant to Section 156(c) and the terms of the Services Agreement.

## IV. PRICES, CHARGES AND PAYMENT

A.  BMC will provide Services upon request or agreement of the Customer, in accordance with the Pricing Schedule attached.

B. BMC reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective each January.  BMC shall provide thirty (30) days' prior written notice to Customer of such proposed increases.

C. Customer agrees to reimburse BMC for any out-of-pocket expenses necessarily incurred in support of the services provided under this Agreement.

D. Wire transfer information for the transmission of payments is as follows:

> Bank Name - Bridge Bank, N.A.
> ABA/Routing # - 121143260
> Account Name - BMC Group, Inc.
> Account # - 0102705027

E. In connection with high volume noticing, or publication services, Customer may be required to prepay BMC estimated postage or publication amounts with respect to each notice. Alternatively, Customer may authorize BMC to cause courier's charges (such as UPS or FedEx) to be stated to Customer's own account with such courier.

F. BMC agrees to regularly invoice Customer and Customer agrees that the amount invoiced is due and payable within fifteen (15) days. If any amount is unpaid as of fifteen (15) days from the receipt of the invoice, Customer further agrees to pay a late charge, calculated at one and one-half percent (1-1/2%) of the amount unpaid, accruing monthly from the invoice date. In the case of a dispute in the invoice amount, notice shall be given to BMC within ten (10) days of receipt of the invoice by Customer. Late charges shall not accrue on any amounts in dispute. The undisputed balance of the invoice amount is due and payable in the normal course.

G. Customer shall pay or reimburse all taxes applicable to services performed under this Agreement and, specially, taxes based on disbursements made on behalf of Customer, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of BMC.

H. To the extent permitted by applicable law, BMC shall receive a retainer in the amount of $0.00 (the "Retainer") that may be held by BMC as security for Customer's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement.  BMC shall be entitled to hold the Retainer until the termination of the Agreement.  BMC may use the Retainer against unpaid fees and expenses hereunder.  BMC may use the Retainer against all pre-petition fees

and expenses, the Retainer will then be replenished to the original amount by the Customer.  Following termination of the Agreement, BMC shall return to Customer any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

I. In the event of termination pursuant to Section XII hereof, Customer shall be liable for all amounts then accrued and/or due and owing to BMC under the Agreement.

## V. RIGHTS OF OWNERSHIP

A. The parties understand that the software programs and other similar proprietary materials furnished by BMC pursuant to this Agreement and/or developed during the course of this Agreement by BMC are the sole property of BMC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, subroutines, procedural manuals, and documentation.  Customer agrees not to copy or permit others to copy for unauthorized use the source code from the support software or any other programs or similar proprietary materials furnished pursuant to this Agreement.

B. Customer further agrees that any ideas, concepts, know-how or techniques relating to data processing or BMC's performance of its services developed during the course of its Agreement by BMC shall be exclusive property of BMC. Fees and Expenses paid by the Customer do not vest in the Customer any rights in such property.

C. The Customer agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished/provided under the Services Agreement.

## VI. CUSTOMER DATA

A. The Customer is responsible for, and BMC does not verify, the accuracy of the programs, data and other information it or any agent of the Customer submits for processing to BMC and for the output of such information, including without limitation, with respect to preparation of statement of financial affairs and schedules of assets and liabilities (collectively "SOFA's and Schedules").  BMC bears no responsibility for the accuracy and content of SOFA's and Schedules, and the Customer is deemed hereunder to have approved and reviewed all SOFA's and Schedules filed on its behalf.

B. The Customer agrees and represents and warrants to BMC that before delivery of any information to BMC: (i) the Customer has full authority to deliver such information to BMC, (ii) BMC is authorized to use such information to perform

Services hereunder,

C. Any data, storage media, programs or materials furnished to BMC by the Customer may be retained by BMC until the Services hereunder are paid in full. The Customer shall remain liable for all fees and expenses incurred by BMC under this Agreement as a result of data storage or other materials maintained, stored or disposed by BMC.

D. The Customer agrees to initiate and maintain back up files that would allow the Customer to regenerate or duplicate all programs, data or information provided by Customer to BMC.

E. Upon Customer's request at any time or times while this Agreement is in effect, BMC shall immediately deliver to Customer at Customer's sole expense, any or all of the nonproprietary data, information and records held or controlled by BMC pursuant to this Agreement, in the form requested by Customer. Any information, data and records, in whatever form existing, whether provided to BMC by Customer or developed by BMC for Customer under this Agreement, may be retained by BMC until all amounts due under this Agreement are paid in full, it being understood that neither party asserts rights of ownership in the official claims register or materials filed with BMC as an agent of the court.

F. Customer shall remain liable for all charges imposed under this Agreement as a result of data or physical media maintained by BMC. BMC shall dispose of the data and media in the manner requested by Customer. Customer agrees to pay BMC for reasonable expenses incurred as a result of the disposition of the data or media. After giving Customer thirty (30) days' advance notice, BMC reserves the right to dispose of data or media maintained by BMC for Customer if Customer has not utilized the services provided herein for a period of at least ninety (90) days or if Customer has not paid all charges due to BMC.

## VII. FORCE MAJEURE

Whenever performance by BMC of any of its obligations hereunder is materially prevented or impacted by reason of any act of god, government requirement, strike, lock-out or other industrial or transportation disturbance, fire flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, of by reason of any other matter beyond BMC's reasonable control, then such performance shall be excused, and the Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## VIII. ARBITRATION

Any dispute arising out of this Services Agreement or the breach thereof shall be finally

resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators' names in accordance with such rules. The arbitration shall be conducted in the English language in accordance with the United States Arbitration Act. Notwithstanding the foregoing, upon the commencement of any chapter 11 case(s) by the Customer, any disputes related to this Services Agreement shall be decided by the bankruptcy court handling such chapter 11 case(s).

## IX. ATTORNEYS FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance of or interpret the provisions of the Services Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs and other related expenses.

## X. SYSTEM IMPROVEMENTS

As part of its ongoing efforts to improve our service offering, BMC is constantly improving its proprietary database and related reports. BMC therefor reserves the right to make changes in operating procedures/systems, programming languages, application programs and time-period accessibility so long as such changes do not materially interfere with ongoing services provided to the Customer in accordance with the Services Agreement and/or Customer's chapter 11 filing.

## XI. NON-SOLICITATION

Customer agrees that it shall not, directly or indirectly, solicit for employment, employ or otherwise retain staff of BMC during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless BMC provides prior written consent.

## XII. CONFIDENTIALITY

BMC agrees to, and shall cause its servants, agents, employees, licensees, and subcontractors, to safeguard and keep confidential all data, records, information and communications of any sort or form, regardless of whether written, oral, visual or otherwise recorded or transmitted, with respect to Customer, but excluding such data, records, information and communications that exist in the public domain by reason other than a breach of BMC's obligations under this Section. BMC will use the

Confidential Information only for the benefit of Customer in connection with the provision of services under this Agreement. Customer agrees to, and will cause its servants, agents, employees, licensees, and subcontractors to keep all information with respect to BMC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five business days' written notice to the other party, release the required information. The obligations set forth in this paragraph shall survive termination of this Services Agreement.

## XIII. TERMINATION

A. This Agreement shall remain in force until terminated by (i) Customer, or, by BMC upon thirty (30) days' prior written notice to the other party; or (ii) the failure of the Customer to pay BMC invoices for more than 60 days from the date of the invoice or accrual of invoices or unpaid services in excess of the Retainer held by BMC where BMC reasonably believes it will not be paid.

B. If this agreement is terminated after BMC is retained pursuant to Bankruptcy Court Order, the Customer promptly shall seek entry of a Bankruptcy Court order discharging BMC of its duties under such retention, which order shall be in form and substance reasonably acceptable to BMC.

C. In the event that this contract is terminated, regardless of the reason for such termination, BMC shall cooperate with Customer to orderly transfer to Customer or its designee (or destroy, at Customer's direction) data, records and information in its possession or control and to effect an orderly transition of record-keeping functions. BMC shall provide all necessary staff, services and assistance required for an orderly transfer and transition. Customer agrees to pay for such services in accordance with BMC's then existing prices for such services.

## XIV. NO REPRESENTATIONS OR WARRANTIES

BMC makes no representation or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## XV. INDEMNIFICATION

Except with respect to breaches under Section XII "Confidentiality" above, Customer shall indemnify and hold BMC, its officers, employees and agents harmless against any

and all losses, claims, damages, judgments, liabilities and expense whether direct or indirect (including reasonable counsel fees and expenses) resulting from action taken or permitted by BMC in good faith with due care and without negligence in reliance upon instructions or orders received from Customer as to anything arising in connection with its performance under this Agreement. The Customers indemnification obligation shall survive the termination of this agreement.

## XVI. LIMITATION OF LIABILITY

Except as expressly provided herein, BMC's liability to the Customer for any losses, unless due to BMC's gross negligence or willful misconduct, shall be limited to the amount paid by the Customer for the portion of the particular work that gave rise to the alleged loss. In no event shall BMC's liability to the Customer for any losses arising out of this services Agreement exceed the total amount actually paid to BMC for Services provided hereunder. In no event shall BMC be liable for any direct, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## XVII. NOTICES

Any notices or communications required or permitted to be given by this Agreement must be (i) given in writing and (ii) personally delivered or mailed, by prepaid, certified mail or overnight courier, or transmitted by facsimile or electronic mail transmission (including PDF), to the party to whom such notice or communication is directed, to the mailing address or regularly-monitored electronic mail address of such party as follows:

**If to BMC Group, Inc.:**

BMC Group, Inc.
Attn: Tinamarie Feil
600 1st Avenue
Seattle, WA 98104
Email: tfeil@bmcgroup.com
Telephone: 206.499.2169

**If to the Customer:**

_____

_____

**With a copy to:**

_____

_____

Any such notice or communication shall be deemed to have been given on (i) the day such notice or communication is personally delivered, (ii) three (3) days after such notice or communication is mailed by prepaid certified or registered mail, (iii) one (1) working day after such notice or communication is sent by overnight courier, or (iv) the day such notice or communication is faxed or sent electronically, provided that the sender has received a confirmation of such fax or electronic transmission. A party may, for purposes of this Agreement, change his, her or its address, fax number, email address or the person to whom a notice or other communication is marked to the attention of, by giving notice of such change to the other party pursuant to this Section XVII.

## XVIII. APPLICABLE LAW

This agreement shall be construed in accordance with the laws of the State of Washington, without regards to that state's provisions for choice of law and may be modified only by a written instrument duly executed by an authorized representative of Customer and an officer of BMC.

## XIX. ENTIRE AGREEMENT/ MODIFICATIONS/SEVERABILITY

Each party acknowledges that it has read this Services Agreement, understands it, and

agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Services Agreement. The Services Agreement may not be modified or altered by written instrument duly executed by both parties. Customer represents that it has the authority to enter into this Agreement, may be subject to bankruptcy court approval, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. In the event of any conflict between a term of this Agreement and any order of the court exercising jurisdiction over the Customer bankruptcy case, the term(s) of the order shall govern.

## XX. ASSIGNMENT

The Services Agreement and the rights and obligations of BMC and the Customer hereunder shall bind and inure to the benefit of any successors or assigns hereto.

## XXI. EFFECTIVENESS OF COUNTERPARTS

This Services Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This services Agreement will become effective when one or more of the counterparts have been signed by each of the parties and delivered to the other party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

**BMC Group, Inc. Representative:**          **Customer Representative:**

/s/ Tinamarie Feil

_____          _____
Signature                                                Signature

Tinamarie Feil
_____          _____
Printed Name                                            Printed Name

President
_____          _____
Title                                                        Title

## RATES

## BASIC PRINT, MAIL & NOTICING SERVICE

| | |
|---|---|
| Copy/Print | $0.08/image |
| Fold/Collate, Insert, Post | Incuded (no hourly charges) |
| Envelopes | Varies by size |
| Postage, Courier | Discounted rates; reimbursed at cost |
| Mass Data Transmission | Varies by media (CD-Rom, Flash, USB, FTP) |
| Certified Electronic Noticing Service | $50/1000 |
| Legal Notice Publication | Quote (BMC discounted rate) |

## CLAIMS MANAGEMENT

| | |
|---|---|
| eClaims & eBallot Platform Hosting | Included |
| Filed Claim Receipt, Process, Docketing | At Clerical hourly rate |
| Add'l Scans & Link to DB | $0.08/image |
| Schedules Data Collection & Prep | Upon request at hourly rates |
| Analysis & Reconciliation | Upon request at hourly rates |
| Secure Client Access | No charge, unlimited authorized users |
| Ballot Solicitation & Tabulation | Upon request at hourly rates |

## DOCUMENT & INFORMATION MANAGEMENT

| | |
|---|---|
| Document Imaging & link to DB | $0.08/image |
| Live Operator Call Center | $60 per hour |
| Automated (IVR) Call Center | $0.30 per minute |
| Data Storage & Maintenance | $0.08/record/month [CAP: $800/mo] |
| Public Case Website Hosting | $250/mo [Waived] |
| SmartRoom (VDR) | 2 GB Included |
| Physical Document Storage | $1.45/box/month [Waived] |

## HOURLY RATES

| | |
|---|---|
| Clerical & Document Custody | $25-$40 /hour |
| Analysts/Case Support Associates | $65-$90 /hour |
| Technology/Programming | $75-$125 /hour |
| Consultants/Senior Consultants | $95-$125 /hour |
| Project Manager/Director | $130- $175 /hour |
| Executive | Charges Waived |

EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| BROWN INDUSTRIES, INC., | ) | CASE NO. 21-41010-pwb |
| | ) | |
| Debtor. | ) | |

## DECLARATION OF TINAMARIE FEIL IN SUPPORT OF MOTION FOR AUTHORITY TO RETAIN BMC GROUP, INC. AS CLAIMS, NOTICING, AND BALLOTING AGENT FOR THE DEBTOR

I, Tinamarie Feil, under penalty of perjury, declare as follows:

1.      I am President of Client Services at BMC Group, Inc. ("BMC"), a chapter 11 administrative services firm with offices at 600 1st Avenue, Seattle, WA 98104.  Except as otherwise noted in this declaration (this "Declaration"), I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      I submit this Declaration in support of the *Motion for Authority to Retain BMC Group, Inc. as Claims, Noticing, and Balloting Agent for the Debtor*, filed contemporaneously herewith (the "Motion").[1]

### Qualifications

3.      BMC is an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R. Bankr.P. 9001(9) and 2002(g)(4).  BMC was founded in 1998 as an administrative services provider focused on chapter 11 bankruptcy cases.  BMC's team members have experience in data and claims processing, noticing, claims administration, solicitation, balloting, disbursements, and facilitating other administrative aspects

---

[1]  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed in the Motion.

of chapter 11 cases as well as experience in matters of this size and complexity.  BMC has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest.

### Services to be Rendered

4.        As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), BMC will perform the noticing and claims-related services and any related administrative, technical, and support services as specified in the Motion and the Services Agreement, at the request of the Debtor or the Clerk of Court.  In performing such services, BMC will charge the Debtor the rates set forth in the Services Agreement, which is attached as **Exhibit A** to the Motion.

5.        BMC represents, among other things, the following:

(a)        With the possible exception of *de minimis* fees and expenses incurred prior to the Petition Date, BMC is not a creditor of the Debtor;

(a)        BMC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(b)        By accepting employment in this chapter 11 case, BMC waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

(c)        In its capacity as the Claims and Noticing Agent in this chapter 11 case, BMC will not be an agent of the United States and will not act on behalf of the United States;

(d)        BMC will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

(e)        BMC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(f)        In its capacity as Claims and Noticing Agent in this chapter 11 case, BMC will not intentionally misrepresent any fact to any person;

(g)    BMC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(h)    BMC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(i)    None of the services provided by BMC as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk.

6.    To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither BMC, nor any of its personnel, has any materially adverse connection to the Debtor, it's creditors, or other relevant parties with respect to any matter for which BMC will be employed.  BMC may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which BMC serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.  However, to the best of my knowledge, such relationships, if any, are materially unrelated to these chapter 11 cases.

7.    BMC has and will continue to represent clients in matters unrelated to this chapter 11 case.  In addition, in matters unrelated to this chapter 11 case, BMC and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtor's chapter 11 case.  BMC may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor.

8.    BMC and its personnel in their individual capacities regularly use the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors.  Such firms engaged by BMC or its personnel may appear in chapter 11 cases representing the Debtor or

parties in interest. All engagements where such firms represent BMC or its personnel in their individual capacities are unrelated to this chapter 11 case.

9.     BMC has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, all BMC partners and employees are barred from trading in securities with respect to matters in which BMC is retained. Upon information and belief, and upon reasonable inquiry, BMC does not believe that any of its partners or employees own any debt or equity securities of the Debtor or of any of its affiliates.

10.     Based on the foregoing, I believe that BMC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged. Moreover, to the best of my knowledge and belief, neither BMC nor any of its employees hold or represent any interest materially adverse to the Debtor's estate with respect to any matter upon which BMC is to be employed. Should BMC discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, BMC will use reasonable efforts to promptly file a supplemental declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated:  August 20, 2021.

_____
Tinamarie Feil
President, Client Services
BMC Group, Inc.

4