## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| BROWN INDUSTRIES, INC., | ) | CASE NO. 21-41010-pwb |
| | ) | |
| Debtors. | ) | |
| | ) | |

## DECLARATION OF J. DARREN WILCOX
## IN SUPPORT OF FIRST DAY APPLICATIONS AND MOTIONS

I, J. Darren Wilcox, declare under penalty of perjury as follows:

1.

I am the President and Co-Chief Executive Officer of Brown Industries, Inc. (the "**Debtor**") a corporation duly organized under and existing pursuant to the laws of the State of Georgia. In this capacity, I have obtained detailed knowledge of and experience with the business and financial affairs of the Debtor.

2.

I am authorized to submit this declaration in support of the Debtor's First Day Motions (as hereinafter defined). Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, information provided by employees under my supervision or professionals retained by the Debtor, or my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial affairs. Opinions regarding compliance with applicable statutes or rules are based upon advice of counsel. If I were called upon to testify, I would testify competently to the facts set forth herein.

## Background

3.

On August 20, 2021 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Sub-Chapter V Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to operate its business as debtor-in-possession pursuant to Section 1184 of the Bankruptcy Code.

4.

The Debtor began as the first flooring sample business to serve the carpet industry. That business was started by James Brown in the 1950s. Over the years it grew and expanded into other areas such as printing and product displays, eventually becoming a global "point of purchase" business with more than 1 million square feet of manufacturing space. The Debtor currently employs approximately 294 employees and has three separate divisions: a sample division, a printing division and a display division. In recent years, the Debtor's has experienced cash flow issues which they were able to address in part through loans and advances made to the Debtor by the Brown family and one or more other shareholders. Problems arising primarily as result of the onset of COVID pandemic in 2020 exacerbated the Debtor's cash flow issues. Eventually, these cash flow issues forced the Debtor to make the difficult decision to lay off a number of its employees and mothball its printing business. Shortly thereafter, the Debtor, in consultation with its advisors, decided to seek relief under Chapter 11 of the Bankruptcy Code in order to preserve and enhance the value of its business and assets for its employees, customers, vendors and other stakeholders. Additional information about the Debtor's business and the events leading up to the Petition Date can be found in the Declaration of J. Darren Wilcox in

Support of First Day Applications and Motions (the "**Wilcox Declaration**") which is incorporated herein by reference.

**The First Day Motions**

5.

In conjunction with their bankruptcy petitions, the Debtor filed the motions and applications listed on <u>Exhibit A</u> (collectively, the "**First Day Motions**"). I submit this declaration in support of the First Day Motions. I have reviewed each of the First Day Motions (including the exhibits and schedules attached thereto) and, to the best of my knowledge, believe that the facts set forth therein are true and correct. Such representation is based upon information and belief, through my review of various materials and other information, and my experience and knowledge of the Debtor's operations and financial condition. If called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth in each of the First Day Motions.

6.

As a result of my first-hand experience, and through my review of various materials and other information, discussions with other of the Debtor's executives and discussions with outside advisors, I have formed opinions as to: (a) the necessity of obtaining the relief sought in the First Day Motions; (b) the importance of the relief sought in the First Day Motions for the Debtor to continue to operate effectively; and (c) the negative impact upon the Debtor of not obtaining the relief sought in the First Day Motions.

7.

As described more fully below, the relief sought in the First Day Motions will minimize the adverse effects of the Chapter 11 case on the Debtor and ensure that the Debtor's

reorganization efforts proceed as efficiently as possible and result in maximum recovery for creditors, and I believe that the relief sought in each of the First Day Motions is necessary to enable the Debtor to operate as debtor-in-possession.

**Motion for Establishment of Procedures for Monthly Compensation and
<u>Reimbursement of Expenses of Professionals (the "Compensation Procedures Motion")</u>**

8.

The Debtor believes that the relief requested in this Motion will streamline the professional compensation process and enable the Court and all other parties to monitor the professional fees incurred in this case more effectively.

9.

Briefly stated, the requested procedures would permit each Professional to serve upon counsel for the Debtor, any trustee appointed pursuant to Section 1183 of the Bankruptcy Code (the "**Sub-V Trustee**") and the Office of the United States Trustee a statement of fees and expenses incurred by the Professional during the preceding month (a "**Monthly Statement**"). Subject to the terms and conditions of any order granting the DIP Financing Motion and/or Cash Collateral Motion (defined below), the Debtor would be authorized to pay each Professional the fees and expenses requested in the Monthly Statement in the absence of an objection received within ten (10) days after service of the Monthly Statement. All fees and expenses of each Professional, whether or not paid or objected to in connection with a Monthly Statement, would remain subject to review and approval by the Court in connection with interim and final fee applications under Sections 330 and 331 of the Bankruptcy Code.

10.

The Debtor proposes that these procedures not apply to professionals retained in the

ordinary course of business pursuant to a separate motion, or those retained pursuant to 28 U.S.C. § 156 (in the case of the claims agent).

## Motion for Authority to Retain BMC Group as Claims, Noticing, and Balloting Agent for the Debtors (the "BMC Retention Motion")

11.

The Debtor believe it is necessary and in the best interests of its creditors and estate to engage BMC Group ("**BMC**") to act as outside agent to the Clerk of the Bankruptcy Court to assume full responsibility for the distribution of notices and proof of claim forms and the maintenance, secondary processing, and docketing of all proofs of claim filed in the Debtor's bankruptcy case. BMC provides comprehensive bankruptcy management services, including data processing, noticing, claims processing, and other administrative tasks in Chapter 11 cases. In addition, in connection with any plan of reorganization proposed by the Debtor, the Debtor has determined that it will require the services of BMC with respect to the mailing of the Debtor's plan, and ballots and in maintaining and tallying the ballots in connection with the voting on such plan.

## Motion of the Debtors for Approval of Notice Procedures (the "Notice Procedures Motion")

12.

Hundreds of creditors and parties in interest may be technically entitled to receive notice in this case. To require the Debtor to provide notice of all pleadings and other papers filed in this case to these parties in interest would be extremely burdensome and costly to the Debtor's estate as a result of the photocopying, postage, and other expenses associated with such large mailings. Accordingly, the Debtor believes that the notice procedures requested in the Notice Procedures Motion are in the best interests of their estates and creditors, and will not prejudice the rights of

any party in interest in these cases.

### Motion for Authority to (A) Maintain Existing Bank Accounts and Cash Management System, and (B) Continue Use of Existing Business Forms (the "Cash Management Motion")

13.

Prior to the commencement of these Chapter 11 cases, the Debtor maintained five (5) bank accounts with BB&T (now Truist), a schedule of which is attached to the Cash Management Motion as <u>Exhibit A</u>. It is critical for the Debtor to be able to continue its existing cash management system (as modified by any debtor-in-possession financing or cash collateral arrangement approved by this Court) during the pendency of this Chapter 11 case. Any disruption to the Debtor's ordinary business affairs at this critical stage in the reorganization process could adversely impact its ability to successfully reorganize.

14.

The Debtor's pre-petition bank accounts and business forms are integrally related to the Debtor's cash management system. Thus, maintenance of the Debtor's current accounts and forms is necessary to avoid delays, confusion, and disruption of the Debtor's business.

### Motion for Authority to Pay Pre-Petition Wages, Payroll Taxes, Certain Employee Benefits, and Related Expenses and Other Compensation to Employees and Independent Contractors (the "Wages and Benefits Motion")

15.

As of the Petition Date, the Debtor employed approximately 294 employees and independent contractors.

16.

The Debtor has incurred certain pre-petition obligations that remain unpaid as of the Petition Date because they accrued, either in whole or in part, prior to the Petition Date. Even though arising prior to the Petition Date, these obligations (collectively, the "**Obligations**") will become due and payable in the ordinary course of the Debtor's businesses on and after the Petition Date. These obligations can generally be categorized as follows: (i) wages, salaries, and other compensation; (ii) payroll taxes; (iii) qualified 401(k) plan obligations; (iv) health and welfare benefits; and (v) other benefits.

17.

Pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, a debtor's employees' claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay" earned within one hundred eighty (180) days before the Petition Date, and claims against the Debtor for contributions to employee benefit plans arising from services rendered within one hundred and eighty (180) days before the Petition Date, are afforded unsecured priority status to the extent the claims do not exceed $13,650. 11 U.S.C. §§ 507(a)(4)–(5). As of the Petition Date, the Debtor believes that there are no employees for whom the Payroll Obligations would exceed $13,650.

18.

Any delay in paying the Obligations will adversely impact the Debtor's relationship with its Employees and will irreparably impair the morale, dedication, confidence, and cooperation of the very people upon whom the Debtor relies in order for its business to be successful. The Debtor must have the support of its employees in order for the Debtor to maximize the going concern value of its assets. At this early stage, the Debtor simply cannot risk the substantial

damage to its business that would inevitably result from a decline in employees' morale attributable to the Debtor's failure to pay previously earned wages, salaries, benefits, and other similar items.

19.

Moreover, absent an order granting the relief requested in this Motion, the Debtor's employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the employees to meet their own personal financial obligations.  The stability of the Debtor will thus be undermined, perhaps irreparably, by the possibility that otherwise loyal employees will seek other employment alternatives.

**Motion of the Debtor for Order Pursuant to 11 U.S.C. §§ 105(a) and 363,
Authorizing the Debtor to Pay Pre-petition Sales and Use Taxes and Authorizing Financial
Institutions to Honor and Process Checks and Transfers Related to Such
<u>Relief (the "Sales and Use Tax Motion")</u>**

20.

In connection with the normal operation of its business in the ordinary course, the Debtor collects sales and use taxes (and pays such taxes on behalf of certain vendors through direct pay certificates)  (collectively, the "**Sales and Use Taxes**") from its customers on behalf of various state and local taxing authorities (the "**Taxing Authorities**") for payment to such Taxing Authorities.

21.

On a periodic basis, typically monthly, but with respect to certain jurisdictions, sometimes quarterly and sometimes annually, the Debtor pays to the Taxing Authorities all previously collected Sales and Use Taxes by means of electronic fund transfers.  The Debtor utilizes a tax service provider, Avalara, which monitors and calculates the amount of Sales and

Use Taxes due to each Taxing Authority, withdraws such funds from the Debtor's bank account (usually on a monthly basis), and remits such funds on the Debtor's behalf to the various Taxing Authorities.

22.

The Debtor estimates that Sales and Use Taxes collected but not paid to the Taxing Authorities as of the Petition Date is approximately (but no less than) $72,178.92, as set forth on Exhibit A attached to the Sales and Use Tax Motion.

23.

The Debtor seeks authority to pay all pre-petition Sales and Use Tax obligations owed to the Taxing Authorities as and when such obligations come due. Also, to the extent the checks have not cleared the Banks as of the Petition Date, the Debtor seeks an order authorizing the Banks to honor the Checks, and to rely on the Debtor's representations as to which Checks may and may not be cleared, without any liability to any third party. Additionally, to the extent the Taxing Authorities have otherwise not received payment for prepetition Sales and Use Taxes due to them, the Debtor seeks authorization to issue replacement checks, or to provide for other means of payment to the Taxing Authorities, to the extent necessary to pay all outstanding Sales and Use Tax obligations due as of the Petition Date.

24.

The relief requested in the Sales and Use Tax Motion is necessary to ensure that the Debtor complies with applicable sales and use tax collection requirements and that the Debtor's officers and directors do not incur any civil or criminal liability for failure to follow the requirements set forth under state law for collecting and paying sales and use taxes.

**Motion for Authority to Use Cash Collateral**
**(the "Cash Collateral Motion")**

25.

In order to carry on its business operations during the Chapter 11 process the Debtor will require the use of cash collections on its accounts receivable. Certain creditors of the Debtor contend that their loans to the Debtor are secured by security interests in the Debtor's accounts receivable and the cash proceeds thereof ("**Cash Collateral**"), as described in more detail below.

26.

The Debtor is a party to a Receivables-Backed Working Capital Facility (the "**Facility**"), by and between the Debtor, on the one hand, and Brown Corporation, BWR Holding, and Leonard J. Fabiano II (collectively, the "**Lenders**"), whereby the Debtor pledged various of its accounts receivable (the "**Receivables**") in exchange for advances of funds on credit by the Lenders. The Lenders assert they are owed in excess of $4.7 million on the Facility and in connection therewith, the Lenders assert liens and security interests in the Debtor's interests in the Receivables. The Lenders also assert that the proceeds received from the Receivables are "cash collateral" as defined in 11 U.S.C. § 363(a). The Lenders are all insiders of the Debtor under 11 U.S.C. § 101(31). The Facility was executed on November 23, 2019, and the Debtor received advances of funds in November of 2020 from the Lenders. No UCC-1 financing statements perfecting the Lenders' interest in the Receivables were filed until July 26, 2021.

27.

The Debtor is also a party to a Master Lease Agreement dated as of April 28, 2016 (the "**Lease**") with First American Commercial Bancorp, Inc. ("**First American**"), pursuant to which, the Debtor leased various pieces of equipment from First American under a finance lease

arrangement. On August 9, 2018, First American (through its agent, Corporation Service Company), filed a UCC-1 Financing Statement asserting an interest in, among other things, "all assets, including but not limited to, all . . . accounts, accounts receivable . . . and all proceeds of the foregoing . . . ." However, the Debtor is not aware of any document that it signed granting First American any security interest in or lien on any of its account receivables. The Lease only grants First American a security interest in and lien on the equipment leased to the Debtor pursuant to the Lease.

28.

The Debtor has filed its Cash Collateral Motion seeking authority to use Cash Collateral in order to pay necessary expenses incurred in connection with the operation of its business, to preserve the value of its assets and/or to enable the Debtor to administer its estate as required under the Bankruptcy Code. The Debtor's use of Cash Collateral is essential to the continued operation of its business, to maintain the value of its property and for an effective reorganization. The Debtor does not propose to use Cash Collateral to pay any amounts due and owing prior to the Petition Date unless approved by order of the Court. However, because of the nature of the Debtor's business, it must have use of Cash Collateral to meet its ongoing obligations and to preserve the value of its assets. Therefore, the use of Cash Collateral is in the best interest of the Debtor, its estate and its creditors.

29.

In its Cash Collateral Motion, the Debtor has proposed providing adequate protection for the use of Cash Collateral as follows:

(a) Each of the Lenders and First American shall be given a replacement lien in post-petition accounts receivable and proceeds thereof to the extent that, and only to the extent that,

such pre-petition liens are valid, properly perfected, non-avoidable and enforceable interests, and in the same relative priority; and

(b) Cash Collateral may only be used for items set forth in a budget to be approved by the Court. A proposed budget is attached as Exhibit A to the Cash Collateral Motion.

30.

A proposed Interim Order is attached as Exhibit B to the Cash Collateral Motion. Pending a final hearing on the Cash Collateral Motion, the Debtor requires use of Cash Collateral to continue operating its business, including making payroll, paying vendors and suppliers for post-petition obligations, and meeting ordinary working capital expenses. Potentially irreparable harm to the Debtor, its creditors and its estate may occur absent authorization for the use of Cash Collateral. The Debtor's need for use of Cash Collateral is ongoing, immediate and critical. Granting the relief sought in the Cash Collateral Motion, including entry of the proposed Interim Order, will preserve the assets of Debtor's estate and its value and is in the best interests of the Debtor, its creditors and the Debtor's estate.

## Conclusion

Accordingly, for the reasons stated herein, and in each of the First Day Motions, I respectfully request that each of the First Day Motions be granted in its entirety, together with such further relief as the Court deems just and proper.

Executed this 19th day of August, 2021.

/s/ J. Darren Wilcox
J. Darren Wilcox
Co-Chief Executive Officer and President

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§152 and 3571.

# EXHIBIT A

# INDEX OF FIRST DAY MOTIONS

| | |
|---|---|
| 1. | Motion for Authority to Retain BMC Group as Claims, Noticing, and Balloting Agent for the Debtor |
| 2. | Motion for Establishment of Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals |
| 3. | Motion for Approval of Notice Procedures |
| 4. | Motion for Authority to (A) Maintain Existing Bank Accounts and Cash Management System, and (B) Continue Use of Existing Business Forms |
| 5. | Motion of the Debtor for Order, Pursuant to U.S.C. §§ 105(a) and 363, Authorizing the Debtor to Pay Pre-petition Sales and Use Taxes and Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief |
| 6. | Motion for Order Authorizing Payment of Pre-Petition Wages, Payroll Taxes, Certain Employee Benefits, Related Expenses, and Other Compensation to Employees and Independent Contractors |
| 7. | Motion for Authority to Use Cash Collateral |