**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| BROWN INDUSTRIES, INC., | ) | CASE NO. 21-41010-pwb |
| | ) | |
| Debtor. | ) | |
| | ) | |

---

**CHAPTER 11 PLAN OF LIQUIDATION
UNDER SUBCHAPTER V OF TITLE 11, UNITED STATES CODE**

---

**SCROGGINS & WILLIAMSON, P.C.**

**J. Robert Williamson
Georgia Bar No. 765214
Ashley Reynolds Ray
Georgia Bar No. 601559
J. Hayden Kepner, Jr.
Georgia Bar No. 416616
4401 Northside Parkway
Suite 450
Atlanta, GA 30327
(404) 893-3880**

**Counsel for the Debtor**

**Dated: November 18, 2021**

## INTRODUCTION

Brown Industries, Inc., debtor and debtor-in-possession in this Chapter 11 Case[1], pursuant to sections 1121, 1123 and 1181 – 1195 of the Bankruptcy Code and Rule 3016 of the Bankruptcy Rules, proposes this Plan for the resolution of the Allowed Claims against the Debtor.  This Chapter 11 Case was commenced on August 20, 2021 under Subchapter V of Chapter 11 of the Bankruptcy Code.  The Debtor is the proponent of this Plan as required under section 1189 of the Bankruptcy Code and reserves the right to alter, amend, modify, revoke or withdraw this Plan pursuant to section 1193 of the Bankruptcy Code or otherwise.

In accordance with section 1190 of the Bankruptcy Code, this Plan includes (a) a brief history of the business operations of the Debtor, (b) a liquidation analysis, and (c) projections with respect to the ability of the Debtor to make payments as and when they become due under this Plan.  In accordance with section 1181(b) of the Bankruptcy Code, a Chapter 11 disclosure statement is not required under Subchapter V unless otherwise ordered by the Bankruptcy Court.  No such order has been entered by the Bankruptcy Court and, therefore, no disclosure statement has been submitted in connection with this Plan.

This Plan is a contract among the Debtor and all of its creditor constituencies.  It provides the mechanism, timing, and details of the treatment and payment of Allowed Claims.  The information contained in this document is designed to provide the Holders of Allowed Claims against the Debtor with information to enable them to make an informed judgment in voting on the Plan.  **If the Bankruptcy Court enters a Confirmation Order, this Plan will be binding on the Debtor, its creditors, and other interested parties.**

This Plan provides a mechanism for the Debtor to maximize the value of various assets in which the Debtor owns a direct or an indirect economic interest and to utilize value generated from those assets for the benefit of its creditors.  **As set forth in this Plan all trade creditors and certain other creditors with allowed claims should be paid in full no later than thirty (30) days after the Plan becomes effective.  The Debtor estimates that the Effective Date of the Plan will occur no later than January 31, 2022.**  In stark contrast, the liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code would likely yield a much smaller return to creditors.  A liquidation analysis which shows the return estimated by the Debtor under this Plan versus a Chapter 7 liquidation is attached hereto as **Exhibit 1**. For this reason, among others, the Debtor submits that Confirmation of this Plan will provide the best possible return to the Holders of Allowed Claims and is in the best interests of the Debtor and its creditors.

**ACCORDINGLY, THE DEBTOR STRONGLY URGES YOU TO VOTE IN FAVOR OF THIS PLAN.**

---

[1] Capitalized terms used in this Plan are defined in Article I below.

# ARTICLE 1

## DEFINITIONS AND RULES OF INTERPRETATION

For purposes of this Plan, unless defined elsewhere herein, the following terms shall have the respective meanings ascribed to them below.

"**Administrative Expense Claim**" means a Claim arising prior to the Effective Date for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including Professional Fee Claims.

"**Administrative Expense Claimant**" means the holder of an Administrative Expense Claim.

"**Allowed Amount**" means the dollar amount in which a Claim is an Allowed Claim.

"**Allowed [. . .] Claim**" means a Claim or that portion of a Claim against the Debtor that is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office or with BMC Group on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" will also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument, or other agreement or document entered into in connection with the Plan; (b) in a Final Order; or (c) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim) has a corresponding meaning. Notwithstanding any other provision of the Plan, the term Allowed Claim shall not include any Claim held by a Creditor against which the Debtor has asserted a Cause of Action that has the effect of precluding a Distribution with respect to such Claim. An Allowed Claim shall be reduced and not include any amount owed by the Creditor to the Debtor. An Allowed Claim shall not include any penalty or interest accrued after the Petition Date except as otherwise provided expressly in the Plan. Except as expressly provided in the Plan, to the extent that the Holder of an Allowed Claim receives any payment on such Claim from a source other than the Debtor, the amount of such Allowed Claim shall be reduced by the amount of such payment.

"**Allowed Class ... Claim**" means an Allowed Claim in the particular Class(es) or categories described.

"**Assets**" or "**Property**" means all property of the Estate as defined in Section 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions and any Causes of Action that the Debtor or the Estate

may have as of the Effective Date or any time thereafter, wherever situated as such properties exist on the Effective Date or thereafter.

"**Avoidance Action**" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

"**Ballot**" means each of the ballot forms that are distributed to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

"**Ballot Date**" means the date set by the Bankruptcy Court for receipt of Ballots indicating acceptance or rejection of this Plan.

"**Bankruptcy Case**," "**Case**" or "**Chapter 11 Case**" means the Chapter 11 case of Brown Industries, Inc., Case No. 21-41010-pwb, pending in the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means Title 11 of the United States Code (11 U.S.C. §§101 *et seq.*), as in effect on the Petition Date, together with all amendments and modifications to the Code that were subsequently made applicable to the Case.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Georgia, Rome Division.

"**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court (N.D. Ga. L.B.R.), and the official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein.

"**Bar Date**" means October 29, 2021, the date identified in the Notice of Chapter 11 Bankruptcy Case [Dkt. No. 7] as the date by which all Proofs of Claim with the exception of those asserted by governmental entities (as defined in the Bankruptcy Code) are required to be filed against the Debtor.

"**Business Day**" means any day other than a Saturday, Sunday, or "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)) that commercial banks are open for business in Atlanta, Georgia.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise. Causes of Action also include: (i) all rights of setoff or offset, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (ii) the right to object to or otherwise contest Claims or interests; (iii) claims pursuant to sections 362; (iv) Avoidance Actions; and (v) such

claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

"**Chapter 11**" shall mean chapter 11 of the Bankruptcy Code.

"**Claim**" means a claim against the Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.  Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise.

"**Claimant**" means the holder of a Claim.

"**Claims Litigation**" means any and all litigation or proceedings arising out of objections to Claims asserted against the Estate, or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate.

"**Claims Objection Deadline**" means the date that is sixty (60) days after the later of (i) the Effective Date or (ii) the date the Proof of Claim is filed in the Chapter 11 Case, unless extended pursuant to Designated Notice.

"**Class**" or "**Classes**" means a category of Claims or Equity Interests classified together as described in Article 4 of the Plan, pursuant to Section 1122(a) of the Bankruptcy Code.

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Confirmation**" or "**Confirmation of the Plan**" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

"**Confirmation Hearing**" means the hearing(s) held by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be continued from time to time.

"**Confirmation Order**" means the order entered by the Bankruptcy Court in the Case confirming the Plan pursuant to Section 1191, applicable provisions of Section 1129 and other applicable provisions of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtor.

"**Consummation Date**" means the date on which the Disbursing Agent makes the final Distribution in accordance with the Plan.

"**Contingent**" with reference to a Claim, means a Claim that has not accrued and that is dependent on a future event that may or may not occur.

- 5 -

"**Creditor**" means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, and any other Claims classified in the Plan.

"**Debtor**" means Brown Industries, Inc., the debtor-in-possession in this Chapter 11 Case, both before and after the Effective Date as applicable.

"**Designated Notice**" means notice and an opportunity for a hearing as defined in Section 102(a) of the Bankruptcy Code, with notice limited to the Debtor, the Disbursing Agent, the Office of the United States Trustee, and other parties in interest who, after entry of the Confirmation Order, file a request for notice with the Clerk and serve a copy of such request on counsel to the Debtor and the Office of the U.S. Trustee.

"**Disallowed Claim**" means: (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of the Court or otherwise in accordance with the Plan; (b) a Claim that has been listed in the Schedules in the amount of zero dollars or an unknown amount or as contingent, disputed or unliquidated, and as to which no Proof of Claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law.

"**Disbursing Agent**" means the Debtor or its designee as authorized in the Confirmation Order or any subsequent Order of the Bankruptcy Court to make Distributions under the Plan.

"**Disputed Claim**" means, any Claim (other than a Disallowed Claim) that has not been Allowed by a Final Order of the Bankruptcy Court as to which:

(1)    a Proof of Claim has been filed with BMC Group, the Debtor's claims agent, or with the office of the Clerk (or as otherwise directed by a Final Order) or is deemed filed under applicable law or Final Order of the Bankruptcy Court or was listed on the Schedules as not being contingent, disputed or unliquidated, and

(2)    an objection or adversary proceeding has been or may be timely filed by a party-in-interest with standing relating to such Claim or against the Holder of such claim, and any such objection or adversary proceeding has not been

(A)    withdrawn, or

(B)    overruled,  denied or otherwise resolved by a Final Order of the Bankruptcy Court.

"**Distribution**" means any distribution of Cash, Property, interests in Property or other value distributed under this Plan by the Debtor to a Holder of an Allowed Claim.

"**Distribution Date**" means the date upon which any Distribution has been made.

"**Docket**" means the docket or dockets in the Case maintained by the Clerk.

"**Effective Date**" means the first business day after the conditions to the effectiveness of the Plan set forth in Section 11.2 of the Plan have been satisfied or waived.

"**Equity Interests**" or "**Interests**" means any equity interest of a shareholder in the Debtor as of the Confirmation Date.

"**Estate**" means, with regard to the Debtor, the estate that was created by the commencement by the Debtor of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy. In the event that this Plan is confirmed by the Bankruptcy Court under section 1191(b) of the Bankruptcy Code, such definition shall also include (1) all of the property defined by section 541 of the Bankruptcy Code and (2) any earning from services performed by the Debtor, both that Debtor acquires after the commencement of the Chapter 11 Case but before the Chapter 11 Case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurs first.

"**Executory Contract or Unexpired Lease**" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**Final Administrative Expense Claim Bar Date**" means the last day for filing an application or other Bankruptcy Court-approved pleading for allowance and/or payment of an Administrative Expense Claim arising between the Petition Date and the Effective Date, other than Professional Compensation Claims. **The Final Administrative Expense Claim Bar Date will be twenty (20) days after the Effective Date.**

"**Final Decree**" means the Final Order of the Bankruptcy Court entered pursuant to Bankruptcy Rule 3022 closing the Case.

"**Final Decree Date**" means the date on which a Final Decree has been entered closing the Case.

"**Final Order**" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

"**General Unsecured Claim**" or "**Unsecured Claim**" means any Claim against the Debtor that is not (i) an Administrative Expense Claim, (ii) a Priority Tax Claim, (iii) a Priority Non-Tax Claim, (iv) a Secured Claim, or (v) a Subordinated Insider Claim; and further excludes any Claims that are disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

"**Holder**" means a Person holding a Claim.

"**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Initial Distribution**" means the initial Distribution to be made under the Plan.

"**Initial Distribution Date**" means the date on which the Initial Distribution is made, which shall occur no late than thirty (30) days after the Effective Date.

"**Insider**" has the meaning set forth in section 101(31) of the Bankruptcy Code.

"**Insider Claim**" means any Claim that has been or could be asserted against the Debtor by an Insider.

"**Liabilities**" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due, or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, of or relating to:  (a) the Debtor, or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any predecessor, successor, or assign thereof; (b) the Property; (c) the business or operations of the Debtor; (d) the Case; or (e) the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, as used in the Plan, the term "Liabilities" does not include any Postconfirmation or post Effective Date payment obligation expressly set forth and preserved in the Plan.

"**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

"**Petition Date**" means August 20, 2021, the date on which the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code.

"**Plan**" means this Chapter 11 Plan of Liquidation under Subchapter V of Title 11, United States Code, proposed by the Debtor, dated November 18, 2021, (together with all Exhibits or Schedules to the Plan) as the same may hereafter be amended, supplemented, modified, or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

"**Plan Funding Reserve**" means Cash which shall be held in reserve by the Debtor or the Disbursing Agent until the final distribution to the holders of Class 5 Claims and used to pay post-confirmation expenses of the Debtor, the Subchapter V Trustee and the Disbursing Agent as set forth in the Plan.   The amount of such reserve shall be determined by the Debtor and Disbursing Agent in consultation with the Subchapter V Trustee on or before the Effective Date.

"**Plan Support Agreement**" means the agreement dated November 18, 2021 by and between the Debtor and the Subordinated Insider Creditors, a copy of which is attached to the Plan as Exhibit 3.

"**Postconfirmation**" means arising or accruing on or after the Confirmation Date.

"**Postpetition**" means arising or accruing on or after the Petition Date and before the Effective Date.

"**Prepetition**" means arising or accruing prior to the Petition Date.

"**Priority Claimant**" means the holder of a Priority Non-Tax Claim or a Priority Tax Claim.

"**Priority Non-Tax Claim**" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

"**Priority Tax Claim**" means a Claim against the Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

"**Professional**" means those Persons (i) retained pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103, and/or 1106 of the Bankruptcy Code who are to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, and/or 331 of the Bankruptcy Code,  (ii) for which compensation and reimbursement is subject to allowance by the Bankruptcy Court pursuant to sections 328, 330, 331 or 503(b)(2) of the Bankruptcy Code, or (iii) employed by the Debtor or the Distribution Agent, pursuant to this Plan.

"**Professional Fee Claims**" means an Administrative Expense Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred during the period from the Petition Date through the Confirmation Date.

"**Proof of Claim**" means a proof of Claim filed against the Debtor in the Chapter 11 Case by the applicable Bar Date.

"**Proof of Claim No. [. . .]**" means the Proof of Claim identified as Claim No. [. . .] in the official claims register maintained for this Chapter 11 Case by BMC Group, the Debtor's claims and noticing agent in this Case.

"**Property**" means all of the Debtor's and/or the Estate's interest in any property.

"**Pro Rata**" means, with respect to any distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims and all Disputed Claims in such Class and, if applicable, other Classes. The term "*Pro Rata Share*" will also be applied in respect of Administrative Expense Claims, Priority Tax Claims, and Priority Claims, as the context requires in the Plan.

"**Record Date**" means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date.

"**Record Holder**" means the Holder of a Claim as of the Record Date.

"**Released Parties**" means (a) the Debtor, both prior to and subsequent to the Effective Date, and its officers, directors, employees and Professionals, (b) the Subchapter V Trustee, and (c) the Subordinated Insider Creditors.

"**Retained Action**" means all claims, Causes of Action, Avoidance Actions, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or Debtor's Estate has asserted or may assert against any Person, including, without limitation, all claims, Causes of Action and Avoidance Actions that arose before or after the Petition Date.

"**Scheduled**" means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest, as set forth in the Debtor's Schedules.

"**Schedules**" means the schedules of Assets and liabilities, statements of financial affairs, and such other schedules in accordance with section 521 of the Bankruptcy Code filed by the Debtor in the Chapter 11 Case on September 10, 2021 [Dkt. No. 51], as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim against the Debtor to the extent secured by a Lien on any property of the Debtor to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

"**Subchapter V**" shall mean subchapter V of Chapter 11, codified at 11 U.S.C. §§ 1181-1195.

"**Subchapter V Trustee**" means Gary Murphey, solely in his capacity as the Subchapter V trustee appointed in this Chapter 11 Case by the United States Trustee pursuant to section 1183(a) of the Bankruptcy Code, and any successor Subchapter V trustee.

"**Subordinated Insider Claims**" means any Claims listed on the Debtor's Schedules or asserted against the Debtor for, by, or on behalf of the Subordinated Insider Creditors, including, but not limited to, Claims evidenced by Proof of Claim Nos. 104, 106, 107, 108, 109, 110 and 111.

"**Subordinated Insider Creditors**" means, collectively, Brown Corporation, Brown-Whitworth Properties, LLC, and BWR Holdings, LLC.

"**Tax Claim**" means any Allowed Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"**Taxes**" means all (i) federal, state, local or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, sales, capital, value added, profits and estimated taxes and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Governmental Authority or paid in connection with any item described in clause (i) hereof.

"**Unclaimed Property**" means any funds payable to Holders of Claims which are unclaimed.  Unclaimed Property shall include:  (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (b) funds for checks which have not been presented and paid within ninety (90) days of their issuance; (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such Property; and (d) checks (and the funds represented thereby) which are not mailed due to the lack of required tax identification information, but only following at least one mailed request for this tax identification information.

"**Unimpaired Claim**" means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**United States Trustee**" means the United States Trustee for Region 21, and the Office of the United States Trustee located in Atlanta, Georgia.

"**Unsecured Creditor**" means any Creditor holding an Unsecured Claim.

"**Voting Deadline**" means the date established by the Bankruptcy Court for the filing of Ballots to accept or reject the Plan.

      1.1.   <u>Rules of Interpretation</u>.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to this Plan, as the same may be amended, waived or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

1.2.    Computation of Time.  In computing any period of time prescribed or allowed by this Plan, the provision of Bankruptcy Rule 9006(a) will apply.

1.3.    Exhibits and Schedules.  All exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be filed as soon as practicable prior to the Confirmation Hearing.  Holders of Claims may obtain a copy of any such exhibits upon written request to the Debtor.  The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## ARTICLE 2
## BACKGROUND

### A.    Description and History of the Debtor's Business

The Debtor began as the first flooring sample business to serve the carpet industry.  That business was started by James Brown in the 1950s.  Over the years it grew and expanded into other areas such as printing and product displays, eventually becoming a global "point of purchase" business with more than 1 million square feet of manufacturing space.  As of the Petition Date, the Debtor employed approximately 294 employees and had three separate divisions:  a sample division, a printing division and a display division.

### B.    Events Leading to the Commencement of the Chapter 11 Case

In recent years, the Debtor began experiencing cash flow issues.  Initially, the Debtor was able to address those issues through loans and advances made to the Debtor by the Brown family and one or more other shareholders.  However, problems arising primarily as result of the onset of COVID pandemic in 2020 exacerbated the Debtor's cash flow issues.  The Debtor had hoped to close on a transaction in the summer of 2021, which would have provided for a sufficient infusion of new capital to continue operations, but by late July of 2021 it became apparent that this transaction was not viable.   The lack of liquidity and working capital, which conditions were projected to worsen later in 2021, limited the Debtor's ability to operate its business.  Eventually, these cash flow issues forced the Debtor to make the difficult decision to lay off a number of its employees and mothball its printing business.  Shortly thereafter, the Debtor, in consultation with its advisors, decided to seek relief under Chapter 11 of the Bankruptcy Code in order to preserve and enhance the value of its business and assets for its employees, customers, vendors and other stakeholders.

## ARTICLE 3
## KEY EVENTS DURING THE CHAPTER 11 CASE

### A.    Commencement of the Chapter 11 Case

On August 20, 2021, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V as a "small business debtor." Since that date, the Debtor has continued in control over its assets as a debtor-in-possession.  On August 23, 2021, the U.S. Trustee appointed Gary Murphey as the Subchapter V Trustee.

**B.** **Significant Events During the Course of the Bankruptcy**

(i)     **First Day Motions.**  On the Petition Date, the Debtor filed a number of standard "first day motions," seeking authorization to, among other things, (a) pay its employees their wages, salaries, benefits and other obligations owed as of the Petition Date, (b) pay sales and use taxes that accrued prior to the Petition Date, and (c) use "cash collateral" of various entities that held security interests in the Debtor's accounts receivable and other assets.  The Bankruptcy Court subsequently granted each of these motions.

(ii)    **Sale of Business Assets.**  On October 29, 2021, the Bankruptcy Court entered an Order [Dkt 101] authorizing the Debtor to sell substantially all of its personal property assets relating to its print, display and samples divisions for the aggregate purchase price of $5,200,000.00.  The sale closed on October 29, 2021, and, following the payment of ad valorem property taxes relating to the assets, the remaining sale proceeds amounted to $5,116,138.99, which funds are currently being held in the trust account of the Debtor's bankruptcy counsel.

(iii)   **Motion to Sell Real Estate.**  On October 22, 2021, the Debtor filed a motion [Dkt. 93] seeking authorization from the Bankruptcy Court to sell its interest in certain real property, including a warehouse building, located in Whitfield County Georgia.  Should the sale go through as expected, the Debtor's portion of the sale proceeds should equal approximately $3,461,322.00.   In addition, the Debtor proposes entering into a temporary occupancy agreement with the purchaser for up to 120 days in order to enable the purchaser of certain of the personal property the opportunity to remove that property from the warehouse.  The sale motion was orally approved by the Court at a hearing on November 18, 2021, and it is expected that a written order approving the sale will  be entered shortly.

(iv)   **Filing of Schedules and Bar Date for Filing Proofs of Claim.**  On or about September 10, 2021, the Debtor filed its Schedules, in which it listed Claims totaling approximately $21.35 million.  Pursuant to the Notice of Chapter 11 Bankruptcy Case issued on August 23, 2021, the Bar Date by which creditors were required to file Proofs of Claim against the Debtor was set for October 29, 2021.  Approximately one hundred and seventeen Proofs of Claim were filed, totaling approximately $19.226 million by the Bar Date.  There is substantial overlap between the Claims listed in the Debtor's Schedules and the Claims evidenced by the Proofs of Claim.  The Debtor believes that any discrepancies between the two will be resolved in the claims resolution process.

(v)    **Agreements with Subordinated Insider Creditors.**  The Debtor has negotiated a favorable agreement with the Subordinated Insider Creditors, who consist of Brown Corporation, Brown Whitworth Properties, LLC, and BWR Holdings, LLC.  These Subordinated Insider Creditors hold the Subordinated Insider Claims against the Debtor's estate based on amounts owed by the Debtor. The aggregate amount of the Subordinated Insider Claims exceeds $12 million, and the Subordinated Insider Creditors have contended that some of these Claims are

secured by Liens in Assets of the Debtor's estate.  Each of these Subordinated Insider Creditors have agreed that any Distributions to which they would otherwise be entitled on account of the Subordinated Insider Claims shall be subordinated to the Distributions made to holders of Allowed Unsecured Claims until such time as the holders of such Allowed Unsecured Claims have received an amount equal to 100% of the Allowed Unsecured Claims, as set forth herein.

## ARTICLE 4

## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) and 1129(a)(9) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described below, have not been classified.

A Claim is placed in a particular Class only to the extent that the Claim qualifies within the description of such Class and is in a different Class to the extent that it qualifies within the description of such different Class, but the same portion of a Claim may not be in more than one Class.  A Claim is also placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim is placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class, and such Claim has not been paid, released or otherwise settled prior to the Effective Date.  All distributions made on any Allowed Claims shall be paid to the Holders of such Allowed Claims.  The treatment with respect to each Class of Claims provided for in Article 5 shall be in full and complete satisfaction, release and discharge of such Claims.  If a controversy arises as to whether any Claim, or any class of Claims, is properly classified or impaired under the Plan, the Bankruptcy Court shall upon motion and notice, determine such controversy at or before the Confirmation Hearing.  As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claims will be deemed deleted automatically from the Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.

4.1.    Unclassified Claims.

(a)    Administrative Expense Claims.

(b)    Priority Tax Claims.

4.2.    Classes of Claims.

(a)    Class 1: Priority Non-Tax Claims.  Class 1 consists of all Priority Non-Tax Claims against the Debtor.  The Debtor is not aware of any Priority Non-Tax Claims and has prepared Class 1 merely to address the contingency of any Priority Non-Tax Claims being filed against the Debtor and Allowed by the Court.  Class 1 Claims are Unimpaired and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the

Bankruptcy Code. Therefore, Class 1 Claims are not entitled to vote to accept or reject the Plan.

(b)      Class 2: First American Commercial Bancorp Secured Claim. Class 2 consists of the First American Commercial Bancorp Secured Claim. The Class 2 Claim is Unimpaired and is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Class 2 Claim is not entitled to vote to accept or reject the Plan.

(c)      Class 3: Other Secured Claims. Class 3 consists of Other Secured Claims against the Debtor. The Debtor is not aware of any Other Secured Claims and has prepared Class 3 merely to address the contingency of any Other Secured Claims being filed against the Debtor and Allowed by the Court. Class 3 Claims are Unimpaired and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Class 3 Claims are not entitled to vote to accept or reject the Plan.

(d)      Class 4: General Unsecured Claims. Class 4 consists of all General Unsecured Claims against the Debtor. Class 4 Claims are Impaired are entitled to vote to accept or reject the Plan.

(e)      Class 5: Subordinated Insider Claims. Class 5 consists of all Subordinated Insider Claims against the Debtor. Class 5 Claims are Impaired and are entitled to vote to accept or reject the Plan.

4.3.    Classes of Interests.

(a)      Class 6: Equity Interests. Class 6 consists of all Equity Interests in the Debtor. Class 6 Interests are Impaired and are entitled to vote to accept or reject the Plan. Plan.

## ARTICLE 5

## TREATMENT OF CLAIMS AND INTERESTS

5.1.    Unclassified Claims.

(a)      Administrative Expense Claims; Bar Date. Holders of Administrative Expense Claims, other than Professional Fee Claims, which have not been paid in the ordinary course of business by the Debtor must file a motion in the Chapter 11 Case seeking the allowance of such Administrative Expense Claim by the Final Administrative Expense Bar Date. Additional provisions regarding Professional Fee Claims are set forth in Article 10 of this Plan. Each Allowed Administrative Expense Claim will be paid in full on the later of (i) the Initial Distribution Date, or (ii), if an objection to such Claim is timely filed, within five (5) business days following the entry of a Final Order allowing any such Claim or as soon as reasonably practicable thereafter.

(b)      Priority Tax Claims. Each Allowed Priority Tax Claim will be paid in full on the later of (i) the Initial Distribution Date, or (ii) if an objection to such Claim is timely

filed, within five (5) business days following the entry of a Final Order allowing any such Claim or as soon as reasonably practicable thereafter.

5.2.    Classes of Claims.  Unless and to the extent the Holder of an Allowed Claim and the Debtor agree to different treatment, each Holder of an Allowed Claim shall have such Holder's Allowed Claim deemed satisfied under this Plan as follows:

(a)    Class 1: Priority Non-Tax Claims.  Each Allowed Priority-Non-Tax Claim shall be paid in full on the later of (i) the Initial Distribution Date, or (ii) if an objection to such Claim is timely filed, within five Business Days following the entry of a Final Order allowing any such Claim, or as soon as reasonably practical thereafter.

(b)    Class 2: First American Commercial Bancorp Secured Claim.  The Allowed First American Commercial Bancorp Secured Claim shall be paid in full on the later of (i) the Initial Distribution Date, or (ii) if an objection to such Claim is timely filed, within five Business Days following the entry of a Final Order allowing any such Claim, or as soon as reasonably practical thereafter.

(c)    Class 3: Other Secured Claims.  Each Allowed Other Secured Claim shall be paid in full on the later of (i) the Initial Distribution Date, or (ii) if an objection to such Claim is timely filed, within five Business Days following the entry of a Final Order allowing any such Claim, or as soon as reasonably practical thereafter.

(d)    Class 4: General Unsecured Claims.  Following the payment in full of all Distributions required to Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Claims in Classes 1 through 3 of this Plan, each Holder of an Allowed General Unsecured Claim shall receive the following, in full satisfaction of such Holder's Allowed General Unsecured Claim:   On the later of (i) the Initial Distribution Date, or (ii) if an objection to such Claim is timely filed, within five Business Dates following the entry of a Final Order allowing such Claim, or as soon as reasonably practicable thereafter, an amount equal to one hundred percent (100%) of the  Amount of the Allowed Claim (exclusive of any interest accruing Postpetition).  Prior to receiving a Distribution under the Plan, any holder of an Allowed Class 4 Claim which is the beneficiary of a letter of credit to secure such Claim may be required to first surrender the original letter of credit and agree to terminate such letter of credit in accordance with its terms.

(e)    Class 5: Subordinated Insider Claims.  The Subordinated Insider Claims shall be Allowed in the amounts set forth in the Plan Support Agreement and shall not be subject to objection or offset.  As soon as reasonably practicable following the payment in full of all Distributions required to Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Claims in Classes 1 through 4 of this Plan, each Holder of an Allowed Subordinated Insider Claim shall receive distribution of all remaining Property held by the Debtor or the Disbursing Agent, except for amounts in the Plan Funding Reserve.  Prior to the closing of the Chapter 11 Case any funds remaining in the Plan Funding Reserve shall be distributed to the Subordinated Insider Creditors.  The Subordinated Insider Creditors shall be entitled to allocate and apply Distributions received

under the Plan to the full or partial satisfaction of any or all Subordinated Insider Claims as they shall choose in their sole discretion.

(f)     Class 6: Equity Interests.  Holders of Equity Interests in the Debtor shall retain their Equity Interests in the Debtor following the Effective Date but shall receive no Distributions under the Plan on account of such Equity Interests.

(g)     Reservation of Rights.  Except as otherwise explicitly provided in this Plan, nothing herein contained shall constitute an admission as to the nature, validity, or amount of the Claims in each of the Classes designated in this Plan, nor shall it affect, diminish or impar the Debtor's rights and defenses, both legal and equitable, with respect to any Claim, including, but not limited to, legal and equitable defenses to setoffs or recoupments against the Holders of any Claims.  The Debtor hereby fully reserves the right to object to any and all Claims.

## ARTICLE 6

## MEANS FOR THE IMPLEMENTATION OF THE PLAN

6.1.   The Debtor Shall Remain in Existence to Implement the Plan.  Following the Effective Date, the Debtor shall continue as a legal entity charged with administration of the Estate and implementation of the provisions of the Plan.  The Debtor will be authorized and empowered take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Retained Actions, except to the extent waived or released in the Plan or the Confirmation Order.  Unless otherwise provided in the Confirmation Order or subsequent order of the Bankruptcy Court, the Debtor will be responsible for making all Distributions under the Plan.  The Debtor will file all post-confirmation reports required by the United States Trustee's office.  The Debtor will also file the necessary final reports and will apply for a Final Decree as soon as practicable after substantial consummation, the completion of the claim's analysis and objection process, and following entry of Final Orders in all Causes of Action to which it is a party.  After the Debtor has completed these obligations, the members of the board of directors and the officers of the Debtor shall be deemed to have been removed, the Debtor shall be deemed dissolved for all purposes, and all Equity Interests in the Debtor shall be deemed cancelled and extinguished.

6.2.   Sources of Cash for Plan Distributions.  Except as otherwise provided in this Plan or the Confirmation Order, all Cash necessary for the Debtor to make payments pursuant to this Plan may be obtained from (a) existing Cash balances, (b) proceeds made available by subsequent sale or other liquidation of the Debtor's Property, (c) any net income generated from the Debtor's post-petition operations, and (d) any net proceeds realized from any Retained Actions.

6.3.   Plan Funding Reserve.  All Distributions to be made under the Plan, including the Initial Distribution, are subject to the Plan Funding Reserve, which may be used for any winddown or other expenses in connection with implementing the Plan, including post-confirmation fees and expenses incurred by the Debtor, the Subchapter V Trustee and the Disbursing Agent.  The amount of the Plan Funding Reserve will be determined by agreement of the Debtor and the Disbursing Agent, in consultation with the Subchapter V Trustee, prior to the Confirmation Hearing, but is expected to be approximately $150,000.  Following the payment of the obligations described in

this paragraph, and subject to any estimated future expenses, any funds remaining in the Plan Funding Reserve shall be distributed to the Holders of Class 5 Claims pursuant to the Plan.

6.4.    <u>Effectuating Documents, Further Transactions</u>.  The Debtor and its designees are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5.    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6.    <u>Further Authorization</u>.  The Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as they deem necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7.    <u>Liabilities of the Debtor</u>.  The Debtor will not have any liabilities except those expressly assumed under the Plan.

6.8.    <u>Cancellation of Liens</u>.  Except as otherwise provided herein, on the Effective Date, any Lien securing any Secured Claim shall be deemed released and the Holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor (including any cash collateral) held by such Holder and to take such actions as may be requested by the Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtor.

6.9.    <u>Sale of Assets Following Effective Date</u>.  Following the Effective Date, the Debtor shall be permitted to sell any Assets on terms acceptable to the Debtor following Designated Notice.

# ARTICLE 7

# PROVISIONS GOVERNING DISTRIBUTIONS

7.1.    <u>Timing of Distributions</u>.  The Initial Distribution shall be made on the Initial Distribution Date.  Subsequent Distributions will be made as Cash becomes available following the liquidation of any remaining assets of the Estate or otherwise, but in no event more often than once every calendar quarter.

7.2.    <u>Amount of Distributions under the Plan</u>. The exact amount of Distributions to be made under the Plan to each Class of Creditors depends on various factors, including the Allowed Amount of Claims, the winddown expenses of the Debtor and the amount realized from the liquidation of any remaining Assets of the Estate.  A good faith estimate of when such funds may become available to the Estate, the estimated amounts available for Distributions under the Plan, and the amounts to be distributed to Classes of Allowed Claims is shown on **Exhibit 2.**

7.3.    <u>Interest on Claims</u>.  Except as otherwise specifically provided for in this Plan, the Confirmation Order or other order of the Bankruptcy Court post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

7.4.    <u>Distributions by Disbursing Agent</u>.  Other than as specifically set forth in this Plan or in the Confirmation Order, the Disbursing Agent shall make all Distributions required to be made to Holders of Allowed Claims under this Plan.

7.5.    <u>Distributions of Cash</u>.  Any Distribution of Cash made pursuant to this Plan shall, at the Disbursing Agent's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.  Whenever any payment, Distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a Business Day, such payment, Distribution, filing, delivery, or notice may instead by made, without interest or penalty, on the immediately following Business Day.

7.6.    <u>Delivery of Distributions</u>.  Any Distribution to a Holder of an Allowed Claim shall be made by the Disbursing Agent (a) at the address set forth on the Proof of Claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Disbursing Agent after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable Distributions made in Cash shall be retained by the Debtor until such Distributions are claimed.

7.7.    <u>Distributions to Holders as of the Record Date</u>.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim.  Neither the Debtor nor the Disbursing Agent shall have any obligation to recognize any transfer of any Claim occurring after the Record Date.  The Debtor and Disbursing Agent shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.8.    <u>De Minimis Distributions</u>.  The Debtor shall have no obligation to make a Distribution if the amount to be distributed to the specific Holder of the Allowed Claim has a value less than Ten Dollars ($10.00).

7.9.    Fractional Dollars.  Any other provision of this Plan notwithstanding, the Debtor may make, but shall not be required to make, Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.10.    Withholding Taxes.  The Disbursing Agent or the Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

7.11.    Unclaimed Property.  Following a good faith effort to make all Distributions and other payments required under the Plan, the Disbursing Agent, in its discretion, shall have the right to either (a) distribute any Unclaimed Property to Holders of Allowed Claims pursuant to the Plan, or (b) donate any Unclaimed Property to a recognized charity.

## ARTICLE 8
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Rejection of Executory Contracts and Unexpired Leases.  Except as otherwise provided herein, on the Effective Date, all Executory Contracts or Unexpired Leases of the Debtor will be deemed rejected by the Debtor in accordance with, and subject to, the provisions and requirements of sections 365(a) and 1123(b)(2) of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) was previously assumed or rejected by the Debtor pursuant to an order entered by the Bankruptcy Court, (b) previously expired or terminated pursuant to its own terms, or (c) is an executory contract to be assumed by the Debtor under this Plan or otherwise.  Entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such rejections pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

## ARTICLE 9
## PROFESSIONAL FEE CLAIMS

9.1    Final Fee Applications.  All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court by the date that is thirty (30) calendar days after the Confirmation Date unless extended by order of the Bankruptcy Court. The objection deadline relating to the final requests shall be on the date that is twenty-one (21) calendar days after the filing deadline. If no objections are timely filed with respect to a given request, or all timely objections are subsequently resolved, such Professional shall submit to the Bankruptcy Court for consideration a proposed order approving the Professional Fee Claim as an Allowed Administrative Expense Claim in the amount requested (or otherwise agreed), and the order may be entered without a hearing or further notice to any party. The Allowed amounts of any Professional Fee Claims subject to unresolved timely objections shall be determined by the Bankruptcy Court.  Distributions on account of Allowed Professional Fee Claims shall be made as soon as reasonably practicable after such Claims become Allowed Claims.

9.2    Post-Confirmation Professional Fees. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in

seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay all Professionals in the ordinary course of business (including with respect to the month in which the Confirmation Date occurred) without any further notice to, action by or order or approval of the Bankruptcy Court or any other party; provided, however, that any post-confirmation fees of the Subchapter V Trustee must be approved by the Court unless agreed to by the Debtor.

## ARTICLE 10

## PROVISIONS FOR RESOLVING DISPUTED CLAIMS AND DISPUTED INTERESTS

10.1    <u>Objections to and Estimation of Claims</u>.  Except as otherwise provided in this paragraph, only the Debtor shall be entitled to object to the allowance of any Claim.  In addition, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim.  Any objections to Claims must be filed by the Claims Objection Deadline.

10.2    <u>No Distributions Pending Allowance</u>.  Notwithstanding anything to the contrary contained in this Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until (a) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (b) any objection to such Disputed Claim has been settled, withdrawn, or has been determined by Final Order and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

10.3    <u>Distributions on Account of Disputed Claims Once They Are Allowed</u>.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

10.4    <u>Settlements</u>.  On and after the Effective Date, the Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any of its objections to Claims or any Retained Action without approval of the Bankruptcy Court or any other Person.  Notwithstanding the foregoing, the Debtor may, in its sole discretion, seek approval from the Bankruptcy Court of any settlement the Debtor wishes to consummate.

10.5    <u>Setoffs</u>.  Subject to section 553 of the Bankruptcy Code, in the event the Debtor has a Claim or Cause of Action of any nature whatsoever against a Holder of a Claim, the Debtor may, but is not required to, set off or recoup the Debtor's Claim against such Claim (and any Distributions or other rights to receive property arising out of such Claim under the Plan) unless any such Claim or Cause of Action of the Debtor is or will be released under the Plan.  Neither the failure to set off nor the allowance of any Claim or Cause of Action under the Plan shall constitute a waiver or release of any Claim or Cause of Action of the Debtor.

10.6    No Admissions; Objection to Claims.   Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan.  The failure of the Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Debtor's rights to object to or reexamine such Claim in whole or in part.

# ARTICLE 11

## CONFIRMATION AND CONSUMMATION OF THE PLAN

11.1    Conditions to Confirmation.    The following are conditions precedent to confirmation of this Plan, each of which may be waived by the Debtor.

(a)     The Bankruptcy Court shall have approved this Plan or any amended plan in form and substance that is acceptable to the Debtor;

(b)     The Bankruptcy Court shall have approved all motions to approve settlements or compromises filed by the Debtor prior to the Confirmation Hearing unless this requirement is waived by the Debtor;

(c)     The Confirmation Order in a form and substance acceptable to the Debtor shall have been signed by the Bankruptcy Court and entered on the docket of the Chapter 11 Case.

11.2    Conditions to the Effective Date.   The following are conditions precedent to the occurrence of the Effective Date, each of which may be waived by the Debtor.

(a)     The Confirmation Order has become a Final Order;

(b)     All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan; shall be in form and substance that is acceptable to the Debtor in its reasonable discretion;

(c)     The Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

# ARTICLE 12

## EFFECT OF PLAN CONFIRMATION

12.1    Effect of Confirmation.

(a)     Binding Effect.  On the Confirmation Date, the provisions of this Plan shall be binding on the Debtor, the Estate, all Holders of Claims against or Interests in the Debtor, and all other parties-in-interest whether or not such Persons are Impaired and whether or not such Persons have accepted this Plan.

(b)    Effect of Confirmation on Automatic Stay.  The automatic stay arising out of Section 362(a) of the Bankruptcy Code shall continue in full force and effect until the Consummation Date, and the Debtor, the Disbursing Agent and the Estate shall be entitled to all of the protections afforded thereby.  The Court shall have the power to grant such additional and supplemental stays as may be necessary or appropriate to protect and preserve the Property of the Debtor and the Estate or to permit the just and orderly administration of the Estate.

(c)    Filing of Reports.  The Debtor shall file all reports required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

(d)    Revesting of Assets.  Except as otherwise explicitly provided in this Plan, on the Effective Date, all Property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Debtor, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security Holders.  As of the Effective Date, the Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order, or, in the case of a Plan confirmed under section 1191(b) of the Bankruptcy Code, the supervision of the Subchapter V Trustee.

12.2    Except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtor or the Estate that arose prior to the Effective Date.

12.3    Exculpation and Limitation of Liability; and Releases.

(a)    **Exculpation.  From and after the Effective Date, the Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, formulating, negotiating or implementing the Plan, the solicitation of acceptances of this Plan, the Confirmation of this Plan, or the administration of this Plan or the property to be Distributed under this Plan, provided, however, that the foregoing provision shall not apply to an act or omission that is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence.  Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

(b)    **Releases by Holders of Claims.  As of the Effective Date, except as otherwise provided in this Plan or Final Order of the Bankruptcy Court, each Holder**

of a Claim who, directly or indirectly, is entitled to receive a Distribution under this Plan, including Persons entitled to receive a Distribution via an attorney, agent, indenture trustee or securities intermediary shall in exchange for the obligations of the Debtor under this Plan, the consideration provided by the Released Parties for the benefit of the Estate and Holders of Allowed Claims and Interests, and the Cash and contracts, instruments, releases, settlement agreements and other agreements or documents to be delivered in connection with this Plan, be deemed to have forever released and waived all claims, demands, debts, rights, Causes of Action or liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, relating to the Debtor, the Debtor's business, the Chapter 11 Case, or this Plan, existing as of the Effective Date or thereafter that are based in whole or part on any act, omission, transaction event, or other occurrence taking place on or prior to the Effective Date, against the Released Parties, or any of them; <u>provided</u>, <u>however</u>, that this <u>Section 12.3</u> shall not apply to an act or omission that is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases by the Holders of Claims in favor of the Released Parties pursuant to this <u>Section 12.3(b)</u>, and further, shall constitute the Bankruptcy Court's findings that the releases in favor of the Released Parties is: (A) in exchange for the good and valuable consideration provided the Released Parties, (B) in the best interest of the Debtor and all Holders of Allowed Claims; (C) fair, equitable , and reasonable; and (D) given and made after due notice and opportunity for hearing.

(c)      <u>Injunction Related to Exculpation and Releases</u>.  To the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by section 105(a), 524 and 1141 thereof, all Persons that have held, hold or may hold any claims or Causes of Action released or exculpated pursuant to this <u>Section 12.3</u> will be permanently enjoined from taking any of the following actions against any Released Party or its property on account of such released claims or Causes of Action: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, Cause of Action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Lien; (iv) except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Released Party; and (v) commencing or continuing any action or Cause of Action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

12.4      <u>Injunction of Actions Against the Debtor</u>.

(a)      Except as otherwise provided in this Plan or the Confirmation Order, from and after the Effective Date all Persons who have held, hold or may hold Claims

against  the Debtor, are (i) permanently enjoined from taking any of the following actions against the Estate, or any of its property, on account of any such Claims and (ii) permanently enjoined from taking any of the following actions against the Debtor or its property on account of such Claims: (A) commencing or continuing, in any manner or in any place, any action, Cause of Action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any Lien or encumbrance; (D) asserting any right of setoff, subrogation or recoupment of any kind and (E) commencing or continuing, in any manner or in any place, any action or Cause of Action that does not comply with or is inconsistent with the provisions of this Plan; **provided**, **however**, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Plan and nothing contained herein shall preclude any action by a governmental unit based on (i) the Internal Revenue Code or other domestic, state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, or (iii) any criminal laws of the United States or any domestic state, city or municipality.

      **(b)**    **By accepting any Distributions made under this Plan, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions set forth in this <u>Section 12.4</u>.**

12.5    <u>Preservation of Causes of Action</u>.

      (a)    In accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtor will retain and may (but is not required to) enforce all Retained Actions belonging to the Debtor or the Debtor's Estate.  After the Effective Date, the Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  The Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of the Debtor (or any successors holding such rights of action).  The failure of the Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan.

      (b)    <u>No Bar to Suits</u>.  Except as otherwise provided in this Plan, neither this Plan or Confirmation hereof shall operate to bar or estop the Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other

legal action was disclosed in any disclosure statement filed by the Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim.

## ARTICLE 13

### RETENTION OF JURISDICTION

13.1    <u>Retention of Jurisdiction</u>.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a)    To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

(b)    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

(c)    To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtor;

(d)    To hear and rule upon all Retained Actions commenced and/or pursued by the Debtor;

(e)    To hear and rule upon all applications for Professional Fee Claims;

(f)    To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

(g)    To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

(h)    To adjudicate controversies arising out of the administration of the Estate or the implementation of this Plan;

(i)    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

(j)    To determine any suit or proceeding brought by the Debtor to recover property under any provisions of the Bankruptcy Code;

(k)    To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under this Plan;

(l)      To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)      To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

(n)      To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtor sold any of its Assets during the Chapter 11 Case; and

(o)      To enter a Final Decree.

13.2    <u>Alternative Jurisdiction</u>.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

13.3    <u>Final Decree</u>.  After the Confirmation Date, the Bankruptcy Court may, upon application of the Debtor enter a Final Decree in the Debtor's Chapter 11 Case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.  In such event, the Bankruptcy Court may enter an Order closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that: (a) the Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Chapter 11 Case if appropriate for any of the following purposes:  (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtor has brought or bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.

# ARTICLE 14
## TAX CONSEQUENCES

14.1    <u>General Information.</u>

(a)      Tax consequences to creditors and the Debtor may result from confirmation of the Plan pursuant to the Internal Revenue Code and pursuant to state, local, and foreign tax statutes, and any such tax consequences and may vary among the various Classes of Claims, or within each Class.  Because of the various tax issues involved, the differences in the nature of the Claims, the taxpayer status and methods of accounting and prior actions taken by creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only.

(b)      The receipt by a creditor of Cash or property in full or partial payment of its Claim or Interest may be a taxable event.  To the extent that a portion of the cash or the fair market value

of any property received is attributable to accrued and unpaid interest on a Claim being paid, a creditor may recognize interest income.  A Claim may also recognize gain or loss equal to the difference between the sum of the amount of cash received and the adjusted basis in the Claim for which the Holder receives amounts under the Plan.  Such gain or loss may be treated as ordinary or capital depending upon whether the Claim is a capital asset.

14.2   <u>Disclaimer Regarding Tax Consequences</u>.  Each Holder of a Claim and the Debtor should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.  No specific tax consequences to any Creditor or Holder of an Interest are represented, implied, or warranted.  THE DEBTOR ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM.  HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.

14.3   <u>Preparation of Estate Returns and Resolution of Tax Claims</u>.  The Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

# ARTICLE 15

## MISCELLANEOUS PROVISIONS

15.1   <u>Modification of the Plan</u>.  The Debtor may modify this Plan pursuant to section 1193 of the Bankruptcy Code and as herein provided, to the extent applicable law permits.

15.2   <u>Pre-Confirmation Modifications</u>. The Debtor may modify this Plan at any time prior to the Confirmation Hearing by filing the modification with the Court.

15.3   <u>Modification After Confirmation and Prior to Substantial Consummation</u>.  The Debtor may modify the Plan upon a showing that circumstances warrant such a modification and after a notice and hearing.  If the Plan was confirmed under section 1191(a), any holder of a claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

15.4   <u>Modification After Substantial Consummation.</u> If the Plan has been confirmed under section 1191(b), the Debtor may modify the Plan upon a showing that the circumstances warrant such a modification and after a notice and hearing.

15.5   <u>Revocation of Plan</u>.  The Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

15.6    <u>Severability of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.7    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an Exhibit or Schedule to this Plan provide otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Georgia, without giving effect to the principles of conflicts of law of such jurisdiction.

15.8    <u>Further Assurances</u>. The Debtor and all Holders of Claims receiving Distributions under this Plan and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

15.9    <u>Successors and Assigns</u>. This Plan shall be binding upon and inure to the benefit of the Debtor, and his respective successors and assigns, including, without limitation, the Debtor. The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

15.10    <u>Designated Notice</u>.    Notwithstanding any other provision of this Plan, when notice and a hearing is required with regard to any action to be taken by the Debtor or the Disbursing Agent, Designated Notice shall be sufficient.  With respect to any proposed action to be taken as authorized under this Plan which may only be taken following Designated Notice, the following procedures shall apply.  After Designated Notice of the proposed action has been provided as required under the Plan, if any party in interest files with the Court within ten (10) days of the service of such Designated Notice a written objection to the proposed action, and serves a copy of said objection upon the Debtor, the Disbursing Agent and their counsel, then the Court shall schedule a hearing with respect to such objection and, unless the objection is withdrawn by agreement of the parties, the proposed action may only be taken if approved by Final Order of the Court.  If no objection is timely filed and served, the proposed action may be taken without further authorization or approval by the Court.

Respectfully submitted this 18th day of November, 2021.

BROWN INDUSTRIES, INC.


/s/ J. Darren Wilcox
By: J. Darren Wilcox
Its:  President and Co-CEO


SCROGGINS & WILLIAMSON, P.C.


/s/ Ashley R. Ray
J. Robert Williamson
Georgia Bar No. 765214
Ashley Reynolds Ray
Georgia Bar No. 601559
J. Hayden Kepner, Jr.
Georgia Bar No. 416616
4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
(404) 893-3880

*Counsel for Brown Industries, Inc.*
*Debtor-in-Possession*

**EXHIBIT 1**

**DEBTOR'S LIQUIDATION ANALYSIS**

The Debtor has analyzed whether a liquidation of its remaining Assets by a Chapter 7 Trustee, who is unfamiliar with the Debtor and its Assets, would result in a higher return to the Creditors of the Estate than under the proposed Plan.  The Plan proposes a liquidation of the Debtor's remaining Assets by persons, including Professionals, which are already familiar with them.  More importantly, the Plan incorporates a negotiated settlement with the Subordinated Insider Creditors (Brown Corporation, Brown-Whitworth Properties, LLC, and BWR Holdings, LLC) which is highly  favorable to other Creditors and which the Debtor believes is likely to result in full repayment of Allowed Claims of all Creditors than the Subordinated Insider Creditors. The proposed Settlement with the Subordinated Insider Creditors is set forth in more detail in a Plan Support Agreement attached as Exhibit 3 to the Plan.

The Subordinated Insider Creditors' agreement to subordinate their claims to other creditors is conditioned upon approval of this Plan and entry of a Confirmation Order which Allows the Subordinated Insider Claims and releases any and all claims against the Subordinated Insider Creditors related to the Debtor and/or its business.  If the Plan is not confirmed and the Chapter 11 Case is converted to Chapter 7, the Subordinated Insider Creditors would be able to assert that the Subordinated Insider Claims (totaling approximately $12.1 million) should not be subordinated and should be treated the same as General Unsecured Claims.  Based on the Debtor's investigation it appears that the Subordinated Insider Claims are supported by fair consideration provided by the Subordinated Insider Creditors and that the majority of the loans, and other advances which support the Claims were extended at a time when the Debtor appears to have been solvent.  Moreover, a significant portion of the Claims are for unpaid rent for the facilities utilized by the Debtor, and the Debtor believes the rental rates were at or below prevailing market rates.  As a result, it is doubtful whether these Claims could be subordinated by a Chapter 7 Trustee and in order to do so it would require costly and time-consuming litigation.

Shown below is a liquidation analysis showing the projected return under the proposed Plan versus a projected return under a hypothetical distribution under Chapter 7 (assuming that the Subordinated Insider Claims are Allowed and treated the same as General Unsecured Claims). The claim estimates are based on the Debtor's initial review of the claim register and Schedules and the Debtor's books and records.

1

**Amount Available for Distribution:** 14,036,000*

| **Projected Distributions under the Plan** | | **Projected Recovery** |
|---|---|---|

**Secured/Priority Claims**
(Unclassified and Classes 1 – 3)

| | | |
|---|---|---|
| Admin/Reclamation Claims | 51,000 | 100% |
| Priority Tax (IRS) | 534,000 | 100% |
| Class 2 Secured - First American | 133,563 | 100% |

**Total Secured/Priority** 718,563

**Amount Available for Distribution
To General Unsecured Claims** 13,367,437

**Class 4 – General Unsecured** 9,000,000 100%

**Amount Available for Distribution
To Subordinated Insider Claims** 4,367,437

**Class 5 – Sub. Insider Claims** 12,100,000 36%

**Projected Distributions under Chapter 7****

**Secured/Priority Claims**
(Unclassified and Classes 1 – 3)

| | | |
|---|---|---|
| Admin/Reclamation Claims | 51,000 | 100% |
| Priority Tax (IRS) | 534,000 | 100% |
| Class 2 Secured - First American | 133,563 | 100% |

**Total Secured/Priority** 718,563

**Amount Available for Distribution
To General Unsecured Claims** 13,367,437

**Class 4 – General Unsecured
(includes all Insider Claims)** 21,100,000 63%

\* See Exhibit 2 to Plan for calculation of Amount Available for Distribution
\*\* Assumes Chapter 7 administrative expenses equal to $150,000 Plan Funding Reserve under Plan

**EXHIBIT 2**

## ESTIMATED AMOUNTS AVAILABLE FOR DISTRIBUTION

**Projected Assets on Effective Date:**

| | |
|---|---:|
| Crypto | 120,000 |
| CSV Life Insurance | 300,000 |
| Calloway Condo | 50,000 |
| 205 W Industrial | 3,300,000 |
| Projected A/R | 2,200,000 |
| Cash (as of 11/18/21) | 3,700,000 |
| Equipment Sale Proceeds | <u>5,100,000</u> |

**Total**                    **14,770,000**

**Projected Expenses (11/21 – 2/22):**

| | |
|---|---:|
| Payroll | 225,000 |
| Legal (net of retainers) | 233,000 |
| Other Professional | 50,000 |
| Rent | 36,000 |
| Misc. Operating | <u>40,000</u> |

**Total**                    **584,000**

**Plan Funding Reserve**       **150,000**

**Amount Available for Distributions Under Plan**              **14,036,000**

3

## **EXHIBIT 3**

## **PLAN SUPPORT AGREEMENT**



205 W. INDUSTRIAL BOULEVARD
DALTON, GEORGIA 30720-7534
[ TEL ]  706 277 1977
           800 241 4698
[ FAX ]  706 277 3379
www.brownind.com

POP DISPLAYS AND FIXTURES
SALES KITS, SWATCHING, SAMPLING
PRINTING, FINISHING, DIRECT MAIL
LYNK INTERACTIVE SERVICES
DISTRIBUTION SERVICES
CREATIVE SERVICES

November 17, 2021

Brown Corporation
BWR Holdings, LLC
Brown-Whitworth Properties, LLC
c/o Christiane C. Bard
The Minor Firm
745 College Drive, Suite B
Dalton, GA 30720

Re:    Plan Support Agreement

Dear Christiane:

This letter agreement (the "**Agreement**") sets forth certain terms and conditions pursuant to which Brown Corporation, BWR Holdings, LLC and Brown-Whitworth Properties, LLC (collectively, the "**Subordinated Insiders**") have agreed to provide certain financial accommodations to Brown Industries, Inc. (the "**Debtor**") in connection with the Chapter 11 Case (defined below) and the proposed Plan (defined below).

1.    Plan of Liquidation

The Debtor commenced a case (the "**Chapter 11 Case**") under subchapter V of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia, Rome Division (the "**Bankruptcy Court**") on August 20, 2021. As part of the Chapter 11 Case, contemporaneously with the execution of this Agreement, the Debtor is filing its Chapter 11 Plan of Liquidation Under Subchapter V of Title 11, United States Code (the "**Plan**"). Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed thereto in the Plan. The Plan provides for, among other things, certain distributions to the holders of (a) Allowed Administrative Expense Claims, (b) Allowed Priority Tax Claims, (c) Allowed Priority Non-Tax Claims, (d) Allowed Secured Claims, and (c) Allowed General Unsecured Claims (collectively, the "**Non-Subordinated Claims**").

The Subordinated Insiders desire to see the Holders of Allowed General Unsecured Claims receive a greater distribution on their Allowed Claims than they would otherwise be entitled to receive if assets of the estate were distributed to the Holders of Allowed General Unsecured Claims on a pro rata basis with the Subordinated Insiders on account of their Allowed Claims (the "**Subordinated Claims**"). Therefore, the Subordinated Insiders have agreed to subordinate their debt to the Holders of Allowed General Unsecured Claims and only receive a distribution on the Subordinated Claims after Holders of Non-Subordinated Claims receive a

distribution in an amount equal to one hundred percent (100%) (exclusive of post-petition interest on Allowed General Unsecured Claims) of their Allowed Claims. Once all Holders of Non-Subordinated Claims have received a distribution in the amount of one hundred percent (100%) of their Allowed Claims (exclusive of post-petition interest on Allowed General Unsecured Claims), and the Plan Funding Reserve has been established as provided in the Plan, all remaining funds and other property of the Debtor shall be distributed to the Subordinated Insiders and applied to the Subordinated Claims (which are allowed as set forth below) as follows:

| POC # | CREDITOR | CLAIM AMOUNT | PLAN TREATMENT |
|---|---|---|---|
| 110/113 | BWR Holdings, LLC | $910,931.99 (secured) | Allowed- To be paid pro rata with other allowed subordinated claims after all non-subordinated claims are paid 100% (without interest) |
| 111/114 | Brown Corporation | $1,852,490.01 (secured) | Allowed- To be paid pro rata with other allowed subordinated claims after all non-subordinated claims are paid 100% (without interest) |
| 106 | Brown Corporation | $1,188,400.00 (unsecured) | Disallowed- No distribution to be received |
| 107/110 | BWR Holdings, LLC | $1,507,726.05 (unsecured) | Allowed- To be paid pro rata with other allowed subordinated claims after all non-subordinated claims are paid 100% (without interest) |
| 108/111 | BWR Holdings, LLC | $2,628,108.07 (unsecured) | Allowed- To be paid pro rata with other allowed subordinated claims after all non-subordinated claims are paid 100% (without interest) |
| 109/112 | BWR Holdings, LLC | $4,018,027.40 (unsecured) | Disallowed- No distribution to be received |
| 104/107 | Brown-Whitworth Properties, LLC | $8,900.00 (unsecured) | Disallowed- No distribution to be received |

The Subordinated Insiders agreement to the treatment set forth herein is specifically conditioned upon the Plan and the Confirmation Order containing certain language acceptable to the Subordinated Insiders which releases any and all claims against the Subordinated Insiders related to the Debtor and/or its business.

2.    Due Authority

The Debtor on the one hand and  the Subordinated Insiders on the other hand represent and warrant to the Debtor that, as of the date hereof such party has full power and authority to enter into this Agreement.

3.    Termination of Obligations

(a)    The concessions of the Subordinated Insiders under this Agreement shall immediately terminate and be of no further force and effect upon occurrence of the following (unless waived in writing by the Subordinated Insiders):

(i)    the Plan is hereafter amended in any manner that materially increases or alters the obligations of the Subordinated Insiders hereunder or the treatment of the Subordinated Claims, as determined by the Subordinated Insiders in their sole discretion;

(ii)    a Confirmation Order is entered which is not in form and substance acceptable to the Subordinated Insiders; or

(iii)    the Confirmation Order is vacated or reversed on appeal.

(b)    Upon termination of this Agreement, the Subordinated Insiders shall be released from their obligations, commitments, undertakings and agreements under or related to this Agreement and the Plan.

4.    Amendments

No amendment, modification, waiver or other supplement of the terms of this Agreement shall be valid unless such amendment, modification, waiver or other supplement is in writing and has been signed by an authorized representative of each party hereto.

5.    Independent Analysis

Each party to this Agreement hereby confirms that it has made its own decision to execute this Agreement based upon its own independent assessment of documents and information available to it, as it deemed appropriate.

6.    Governing Law

This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Georgia.  By its execution and delivery of this Agreement, each of the parties hereto hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought exclusively in the Bankruptcy Court.   By execution and delivery of this Agreement, each of the parties hereto hereby irrevocably accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding.

7.      Effective Date

This Agreement shall become effective when the Debtor has received counterparts hereof duly executed and delivered by the Subordinated Insiders (the "**Effective Date**").

8.      Counterparts

This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement. Execution copies of this Agreement may be delivered by facsimile or other electronic format, which shall be deemed to be an original for the purposes of this paragraph.

9.      Headings

The section headings of this Agreement are for convenience of reference only and shall not, for any purpose, be deemed a part of this Agreement.

10.     Successors and Assigns

This Agreement shall be binding upon the respective successors and assigns of the parties to the Agreement.

**Remainder of Page Intentionally Left Blank**

IN WITNESS WHEREOF, the Parties have each caused this Agreement to be executed as of the day and year first above written.

BROWN INDUSTRIES, INC.

By:     /s/ J. Darren Wilcox _____

By:     J. Darren Wilcox

Its:     President and Co-CEO


**ACKNOWLEDGED AND AGREED:**


BROWN CORPORATION

By: _____

Name: _____

Its: _____


BWR HOLDINGS, LLC

By: _____

Name: _____

Its: _____


BROWN-WHITWORTH PROPERTIES, LLC

By: _____

Name: _____

Its: _____

IN WITNESS WHEREOF, the Parties have each caused this Agreement to be executed as of the day and year first above written.

BROWN INDUSTRIES, INC.

By: _____

By:    J. Darren Wilcox
Its:    President and Co-CEO


**ACKNOWLEDGED AND AGREED:**

BROWN CORPORATION

By: _____

Name: _LYNN B WHITWORTH_____

Its: _PRESIDENT_____


BWR HOLDINGS, LLC

By: _____

Name: _PATRICK D WHITWORTH_____

Its: _MANAGER_____


BROWN-WHITWORTH PROPERTIES, LLC

By: _____

Name: _PATRICK D WHITWORTH_____

Its: _MANAGER_____